THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEONARD CASCIO, Appellant.

Second Department, July 17, 1978

## APPEARANCES OF COUNSEL

*Joseph F. Votto (Frank S. Polestino* of counsel), for appellant.

*John J. Santucci, District Attorney (Charles Testagrossa Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

SHAPIRO, J.

Defendant, Leonard Cascio, appeals from a judgment of the Supreme Court, Queens County, rendered September 21, 1977, convicting him of assault in the second degree (Penal Law, § 120.05, subd 6 [felony assault]), upon his guilty plea, and sentencing him to an indeterminate term of imprisonment with a minimum of two years and a maximum of four years. Defendant is presently at liberty pursuant to a stay of execution of the judgment. The judgment should be reversed, the defendant's guilty plea should be vacated and the case should be remitted to the Criminal Term for further proceedings on the indictments.

### APPELLANT'S CONTENTIONS

Cascio contends that his motion to suppress was improperly denied and that, in any event and irrespective of the propriety of that denial, his plea of guilty was inappropriate on the facts stated in the indictment.

### THE FACTS

Although the two police officers who testified at the suppression hearing differed in many basic details, for the purpose of our determination we accept the facts as found by the hearing court based on the testimony of Officer Morgan. He testified that during the early morning hours of June 21, 1976 he was assigned to work with Officer Esty and two other officers in an unmarked taxicab. At approximately 1:00 A.M. they stopped to have some food at a White Castle Restaurant located on 78th Street and Northern Boulevard. The vehicle he was driving was parked facing east in the first parking spot closest to Northern Boulevard. While seated in the vehicle, a red and white Cadillac, driven by the appellant, Cascio, pulled into the parking lot and parked alongside of them. Shortly thereafter, Cascio moved his vehicle to another area in the parking lot,

some 50 to 60 feet from where it had originally been parked. Cascio exited the vehicle, walked to the rear of it, looked around and then opened the trunk and looked inside. After closing the trunk he walked to the front of the vehicle in the direction of the restaurant. The codefendant, Fasone, approached Cascio, engaged him in conversation and then both men walked to the rear of the Cadillac. The trunk was again opened and both men looked inside. Morgan testified that after this incident he observed the defendants again in conversation and saw *what he believed to be* the transfer of money in bill form between the defendants. Both men then entered the Cadillac and proceeded to leave the parking lot via the 78th Street exit. At this juncture, the detective believed he was justified in questioning the defendants to ascertain their identity and also whether the vehicle Cascio was operating was properly registered. On cross-examination Morgan stated that at that time probable cause to arrest and search the defendants, or to search the vehicle, did not exist and that it was not his intention to do so. The officers followed with Morgan operating the taxicab. As the defendants exited the parking lot, the unmarked cab pulled out to the right of, and alongside of, the Cadillac.

Detective Morgan said he held up his badge as Officer Esty leaned forward holding up a "police sign" approximately four inches by seven inches in size. At the same time, Detective Morgan said he shouted "Police. Pull the car over." Cascio leaned forward, looked in the direction of Detective Morgan, and nodded his head. Suddenly, Cascio's vehicle sped off, passed a traffic light at the corner of 78th Street and 34th Avenue, and proceeded westbound on 34th Avenue. A chase followed at speeds of up to 100 miles per hour. The chase ended on Queens Boulevard and 35th Street after Cascio's car struck another vehicle and came to a stop against the side of a building. Cascio's vehicle had side-swiped two other vehicles as the chase proceeded at high speeds along the circuitous route he took in an effort to avoid his pursuers.

After the vehicle came to a stop, Detective Morgan approached with his badge in hand and gun drawn. As he approached the vehicle he called out, "Police, don't move." As this occurred, Cascio said, "Get my cousin out of here. There's thirty pounds of grass in the trunk." Detective Morgan noticed the keys on the floor of the vehicle, picked up what he believed to be the trunk key and opened the trunk. Inside, the

detective recovered a bag containing marihuana. Thereafter, the defendants were formally placed under arrest.

### THE DECISION OF SPECIAL TERM ON THE MOTION TO SUPPRESS

Although noting the marked discrepancy between the testimony of Officer Esty and that of Detective Morgan, the hearing Justice said that he accepted Morgan's version of what transpired and he based his findings of fact on that testimony. In his opinion, the Justice declared: "Whether or not the defendants realize[d] that their pursuers were the police is not an issue at this hearing." He therefore made no finding in that regard. Thus, the only articulable basis for his denial of the suppression motion must rest on what Morgan says he saw in the parking lot—to wit, the opening and closing of the trunk of the car and the passing of what appeared to be money.

Detective Morgan testified that based upon what he had observed in the parking lot, he became curious as to what was in the trunk of the Cadillac and that he therefore decided to stop it to ascertain whether the driver was the owner and whether he had a driver's license. If he did not, Morgan was going to arrest him and take the automobile to the police station for an inventory search. The question, therefore, is whether Morgan had the right to pursue and stop the Cadillac based upon what he had seen in the parking lot.

■ Analyzing his testimony, we find the following: (1) Cascio initially parked his car next to the unmarked taxicab and then moved it to another spot about 50 or 60 feet away. Assuming that to be so (and it was contradicted by the other police officer), that act is devoid of any significance since the police were attired in plainclothes and were in an unmarked vehicle—the taxicab (see *People v Simmons*, 58 AD2d 524); and (2) Cascio opened the trunk of the car, looked inside and pointed something out to Fasone. That was clearly such an equivocal act that it does not even rise to being suspicious. Cascio might have had a radio or a television set or tools in the car, or any of a number of legitimate objects. The fact that Morgan *thinks* he thereafter saw money passed is also devoid of significance (see *People v Cruz*, 56 AD2d 529), for "[t]here are too many reasonable hypotheses which would explain the receipt of money and which are consistent with innocence [citations omitted]" *(People v Cohen*, 43 NY2d 872, 873).

■ ■ Thus, the approach by the police and their ordering

Cascio to pull over and stop—assuming that he knew they were police officers—finds no predicate in his prior conduct, which in its totality was susceptible of a number of innocent interpretations (see *People v Davis,* 36 NY2d 280, 282; *People v Hodges,* 55 AD2d 684). The intuition or hunch of a police officer, even if it thereafter turns out to be well founded, cannot justify a stop without a proper predicate therefor *(People v Stewart,* 41 NY2d 65, 66; *People v Moore,* 62 AD2d 155, 157).

■ Cascio had not committed any traffic violation at the time he was ordered to pull over—indeed, the other officer testified that Cascio was stopped for a red light at the time—and thus the order of the police was arbitrary and impermissible (see *People v Ingle,* 36 NY2d 413; *People v Simmons, supra),* particularly since the police had no knowledge that Cascio had ever been involved in a criminal transaction (see, e.g., *People v Brady,* 16 NY2d 186, 189).

As this court said in *People v Flanagan* (56 AD2d 658, 660): " 'Heading' a car off with an unmarked police vehicle is no minimal intrusion of the defendant's rights (cf. *Terry v Ohio,* 392 US 1)."

Since Morgan admitted that he had seen no crime committed by Cascio and was merely curious as to what was in the trunk, his attempt to stop the Cadillac was improper and illegal (see *People v Torres,* 45 AD2d 185, 187). The illegality is highlighted by Morgan's admission that his attempt to stop Cascio was in furtherance of his desire to make an inventory search of the Cadillac (see *People v Allocco,* 59 AD2d 895). Finally, in my opinion, this case is indistinguishable from the recent decision of the Court of Appeals in *People v Sobotker* (43 NY2d 559, 563-564), in which, speaking for a unanimous court, Judge FUCHSBERG said:

"It is conceded that, had the stop of the car which preceded the search not occurred, the possession of the gun and the clip would not have been discovered. The conclusion that the stop was an impermissible intrusion is compelled by *People v Ingle* (36 NY2d 413) where, in considerable detail, we clarified the circumstances under which police officers may stop a motor vehicle on a public highway. We there stressed the fact that such a stop is justified only when conducted pursuant to 'nonarbitrary, nondiscriminatory, uniform' highway traffic procedures, or when there is specific cause or, at least, *reasonable* suspicion that a motorist is about to violate a law. As to

the latter, we quoted the Supreme Court's concordant language in which it spelled out that the cause must be one 'based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" (Terry v Ohio, 392 US 1, 21)' (id., p 420).

"The stop in the present case is to be distinguished from the exercise of the common-law right of inquiry of a pedestrian discussed in the majority opinion in People v De Bour (40 NY2d 210), For the 'common-law power to inquire does not include the right to unlawfully seize' (People v Cantor, 36 NY2d 106, 114; see, also, People v Earl, 40 NY2d 941, revg on dissening opn of Mr. Justice Shapiro at 50 AD2d 289, 290-294, cert den 431 US 943). Thus, except for routine checks to enforce automobile regulations (which neither side contends was the case here), our repeated decisions make abundantly clear that, absent at least a reasonable suspicion that its occupants had been, are then, or about to be, engaged in conduct in violation of law, the stopping of an automobile by the police constitutes an impermissible seizure (People v Ingle, supra, p 418; see, also, People v Allende, 39 NY2d 474; People v Martinez, 37 NY2d 662; People v Simone, 39 NY2d 818; cf. CPL 140.50).

"In particular, 'reasonable suspicion' has been aptly defined as 'the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe that criminal activity is at hand' (People v Cantor, supra, pp 112-113). The requisite knowledge must be more than subjective; it should have at least some demonstrable roots. Mere 'hunch' or 'gut reaction' will not do. (Compare, e.g., People v Erwin, 42 NY2d 1064 [driving through a red light]; People v Singleton, 41 NY2d 402 [apparently switched license plates], with People v Martinez, supra, p 666, n 2; People v Simone, supra; People v Allende, supra; People v Ingle, 36 NY2d 413, supra; People v Cantor, supra; see, also, Pennsylvania v Mimms, 434 US 106 [operating vehicle with expired license plate justified stop]).

"The record here is bare of any objective evidence of criminal activity as of the time of the stop from which flowed the chain of events culminating in the arrest. That the officers, as one of them put it, 'felt that a crime was about to be committed', sincere as this sentiment may have been does not suffice" (emphasis in original).

Thus, as the contraband in the trunk was clearly discovered as a result of the attempted illegal stop of the Cadillac, the suppression motion should have been granted. The judgment should therefore be reversed, the guilty plea should be vacated and the case should be remanded to Criminal Term for further proceedings on the indictments.

In view of our determination we do not find it necessary to reach Cascio's alternative contention that in any event the plea which he took was inappropriate under the facts set forth in the indictment.

MARTUSCELLO, J. P. (dissenting). I would affirm the judgment.

I disagree with my colleagues in this matter. At the outset it is significant to state that we are apparently all in agreement that the police do possess a common-law right to make inquiry into what they deem to be suspicious activity. That right, as noted by the majority, is qualified in that it must find its genesis in articulable facts which may be considered by a police officer; a mere "gut" feeling will not suffice. I would, however, add a most important qualification. The assessment of such articulable facts is a subjective judgment which should be left to the field officer who is in the best position to properly determine the situation. In this respect we must, to a certain minimal extent, at least, defer to the officer's instincts. It is my opinion that the facts of this case, as accurately recounted by the majority, did provide the arresting officers with more than sufficient reason to suspect that some criminal activity was afoot, to continue surveillance of the subjects as they did for a time, to come alongside of the defendants' vehicle and to attempt to make inquiry.

After Cascio drove into the White Castle parking lot and initially pulled alongside of the unmarked police vehicle, as Mr. Justice SHAPIRO noted, he immediately moved to a deserted area. While it is true that Cascio was unaware that the occupants of that vehicle were police officers, and that this act alone is susceptible of an innocent interpretation, the incident occurred on Monday, June 21, 1976, at 1:00 A.M., in effect a Sunday night, in the parking lot of an opened restaurant; Cascio did not enter the restaurant or appear to transact any business therein or which was related thereto. Cascio showed something which was in the trunk of his automobile to the individual who joined him. It appeared that they exchanged

money and then drove away together. In my opinion the totality of these observations would give cause to the prudent, experienced police officer to believe that a need for inquiry existed. Although it may be argued that Cascio's behavior was susceptible of an innocent interpretation, persons do not ordinarily carry on legitimate business transactions under these circumstances.

Though Cascio would have had a perfect right to keep his business private, if it were in fact legitimate, he did not have to pull away to a deserted area; the observations of the police officers raised questions as to the propriety of these activities, giving rise to the officers' common-law right of inquiry. It is clear that they were not motivated by a simple hunch or mere intuition.

The fact that these officers did not exercise this right immediately by stopping the defendants in the parking lot does not in any way vitiate such right. Indeed, in the recently decided case of *People v Andino* (60 AD2d 633), we reversed an order of suppression upon an appeal by the People, holding that where there were clear grounds for suspicion based upon observations of defendants by police officers, such officers proceeded properly when they continued their investigative surveillance of the defendants in their own vehicle after defendants entered an automobile and drove off. We stated (p 633), specifically, that "[r]easonable suspicion was not dissipated by defendants' evasive driving; rather, reasonable suspicion was enhanced."

Thus, in the case at bar, defendants' flight through a red light at highly excessive speeds after the police had identified themselves and asked them to submit to inquiry gave the arresting officers additional grist for their mill. Such identification was made while both cars were relatively still and next to each other and was apparently acknowledged by Cascio. To assume that the defendatns were running for their lives or to evade thieves just is not warranted from the facts. The police clearly identified themselves and Cascio offered no testimony at the suppression hearing to justify a finding that this was not true or that he and Fasone were not aware of the identity of their pursuers. To make a contrary assumption is to give Cascio the benefit of a doubt which, upon the facts presented, he is clearly not entitled to. Furthermore, there is no evidence of a threat of any kind emanating from the police vehicle toward that occupied by Cascio which would justify his imme-

diate flight through a red light and the high speed chase which ensued.

It would appear that the activity of the defendants clearly justified a search of the trunk of the vehicle after they were apprehended (see *People v Lewis,* 26 NY2d 547, 552). If, however, there is any doubt in this respect, Cascio's spontaneous outburst to the officers, to get his cousin out of the car and that there was "grass" in the trunk, gave them complete license to make the seizure.

Furthermore, in my opinion, assuming, *arguendo,* that the police observations in the parking lot did not present a situation of justifiable inquiry, the outcome is unchanged. Once Cascio fled through a red light at a high rate of speed after the police had identified themselves, the officers had a right to pursue him. The ensuing chase, at speeds of up to 100 miles per hour, which terminated in an automobile collision in which there were injuries, gave the police officers further cause to persist. Upon subduing the defendants, the police could properly have impounded the vehicle and, under the circumstances, the contraband would have been lawfully discovered in the course of an innocent police inventory and would have been admissible against Cascio (see *People v Fitzpatrick,* 32 NY2d 499, cert den 414 US 1033; *People v Butler,* 44 AD2d 423, 429 [opn by MUNDER, J.]; *People v Robinson,* 36 AD2d 375, 377 [opn by SHAPIRO, J.]).

This case differs wholly, I believe, from *People v Sobotker* (43 NY2d 559), upon which the majority places great reliance. There the defendants had done nothing more than drive their car slowly down a block, taking time to look into several bars as they passed them, when the police stopped them and pulled them over. That activity, unlike the activity observed in this case, is certainly susceptible of any one of a multitude of innocent interpretations. Certainly the law as espoused in *Sobotker,* quoted by the majority, supports the action taken by the police in the instant matter, where the activity observed in the parking lot was such as to reasonably and properly create a good deal of suspicion. Furthermore, *Sobotker* has little or no relevance to the instant case where the search, seizure and arrest may be sustained solely upon the activity of Cascio following the time the police identified themselves to him, a situation not present in *Sobotker.*

Accordingly, I would affirm the judgment of conviction.

DAMIANI and O'CONNOR, JJ., concur with SHAPIRO, J.; MARTUSCELLO, J. P., dissents and votes to affirm the judgment, with an opinion.

Judgment of the Supreme Court, Queens County, rendered September 21, 1977, reversed, on the law and the facts, motion to suppress granted, plea vacated, and case remitted to Criminal Term for further proceedings on the indictments.