THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILLIP A. BROWN, WILLIAM JOHNSON and ANTHONY SMITH, Appellants.—Appeals by defendants from three judgments (one as to each of them) of the County Court, Nassau County, rendered August 23, 1977 (as to defendants Brown and Johnson) and September 6, 1977 (as to defendant Smith), convicting each of them of attempted criminal possession of a weapon in the third degree, upon their pleas of guilty, and imposing sentence. This appeal also brings up for review the denial, after a hearing, of defendants' motion to suppress evidence found in the car in which they were seated at the time of their arrest. Judgments reversed, on the law and the facts, motion to suppress granted, indictment dismissed, and case remitted to the County Court, Nassau County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. At or about 8:30 P.M. on a cold night in December, 1976, three officers in plainclothes, members of a special antiburglary unit, were on radio motor patrol in an unmarked car in a quiet residential neighborhood in Nassau County. In the course of their patrol they drove past the defendants' car, which was parked by the curb on a dimly lit street. The officers noticed that there were people seated in the parked car and one of them noticed that it bore Pennsylvania license plates, something he would not have expected to see in that neighborhood. Based solely on these observations, the officers decided to investigate. They turned off their headlights, circled the street and came up behind the parked car. They then turned on their headlights and placed a red dome light on the dashboard. At this juncture, all three of the officers left the police car and approached the parked car on foot, virtually surrounding it in the process. Officer Fiorentino, who went to the driver's window, identified himself as an officer and began to question the driver, requesting his license and registration. At or about the same time, Officer Gregory, who was standing behind Fiorentino, asked the passenger seated in the left rear seat for identification while almost simultaneously Officer Mullen, who was standing near the right rear passenger's seat, began to question defendant Brown, who was seated there. At the suppression hearing, none of the officers claimed that he had seen enough to form a reasonable suspicion that the defendants were engaged in any form of criminal activity, and none of them claimed that he had seen so much as a traffic violation being committed. Moreover, as an antiburglary patrol unit, clearly none of these officers were engaged in the type of "nonarbitrary, uniform and systematic [vehicle] inspection" contemplated in *People v Ingle* (36 NY2d 413, 420). Under these circumstances, the propriety of the police conduct must depend upon an assessment of its extent, i.e., whether the police acted so aggressively under the facts of this case that their actions amounted to an unconstitutional seizure. Thus, as the Court of Appeals stated in *People v De Bour* (40 NY2d 210, 219), "Due to the tendency to submit to the badge and our belief that the right to be left alone is 'too precious to entrust to the discretion of those whose job is the detection of crime' * * * a policeman's right to request information while discharging his law enforcement duties will hinge on the manner and intensity of the interference, the gravity of the crime involved and the

circumstances attending the encounter." In effect, the hearing court found that the initial behavior of the police in this case amounted to a permissible street inquiry. We cannot agree. Here, the arresting officers were plainly engaged from the outset in their law enforcement function and not in their equally important public service function (cf. *People v De Bour, supra,* pp 218-219). Thus, they did not approach the defendants' car casually or to determine if its occupants were in need of any help. Instead, they approached the car quietly, and each of the officers immediately began to check the identity of the passenger nearest to him, e.g., Officer Fiorentino immediately asked the driver for his license and registration (cf. *People v Ingle, supra).* It is true that the defendants' car was parked when the officers approached them and that it was not, therefore, actually "stopped" (cf. *People v Miller,* 52 AD2d 425, affd 43 NY2d 789), but any question as to whether the liberty of its occupants was sufficiently restrained to make out a seizure is answered by examining the conduct of Officer Mullen. Shortly after driving up behind the defendants' vehicle, Officer Mullen approached the passenger in the right rear seat and asked him for identification, just as Officer Fiorentino had begun to question the driver. After Brown produced what was admittedly satisfactory identification, Mullen then asked him what he was doing in the area. Brown replied that he could prove what he was doing and attempted to leave the car and walk up the driveway of a nearby house. At this point, Mullen ordered him back into the car. Later, in the course of continued investigation, a gun was sighted on the floor of the car and the defendants were arrested. Manifestly, neither Brown nor any of the other defendants was free to leave from the moment that the police arrived on the scene until the moment that they were actually arrested. Moreover, the police were not investigating any crime or suspected crime. It was not late at night, and the location was not a "high crime" area (cf. *People v De Bour, supra).* Under these circumstances, it is our opinion that the extent of the police intrusion in the instant case was inappropriate, given the predicate on which it was based, and that the conduct of the investigating officers cannot be sustained under the logic of *De Bour* (cf. *People v Cantor,* 36 NY2d 106; *People v Cascio,* 63 AD2d 183). The convictions must therefore be reversed and the indictment dismissed. In view of the foregoing, it is unnecessary to reach any further issue. Latham, J. P., Suozzi, Gulotta, Shapiro and Cohalan, JJ., concur.