OPINION OF THE COURT
Fuchsberg, J.
The controlling issue on this appeal is whether the investigative stop of an automobile operated by the defendant violated constitutional strictures against unreasonable searches and seizures (NY Const, art 1, § 12; US Const, 4th Amdt).
After a trial by jury, the defendant was found guilty of the crime of possession of a weapon, as a felony (Penal Law, § 265.05). This followed the earlier denial of a motion to suppress the weapon, a gun, along with a clip containing five bullets, seized on the same occasion. The Appellate Division affirmed the judgment of conviction, Mr. Justice J. Irwin Shapiro dissenting. For the reasons which follow, we hold that the weapon and clip (including, of course, its contents) should have been suppressed and that, therefore, the judgment must be reversed.
The salient facts are not disputed. On the evening of April 26, 1974, two Nassau County policemen, dressed in plainclothes and seated in an unmarked car, positioned themselves in a well-traveled, well-lit shopping and entertainment area in Wantagh, Long Island; several burglaries had recently been reported in the vicinity. While stationed as described, the officers observed a Buick automobile proceeding slowly towards the next intersection, where a stop sign was located. On the way to the corner, at a point when the Buick was opposite a bar known ás "J.T.’s”, it slowed down from its speed of about five miles per hour to pause for a "second or two” during which the three men who were its occupants were seen to turn their heads in the bar’s direction. Continuing on, the automobile then came to a standstill at the stop sign, where, the police testified, the three men "glanced” toward a second bar. Thereupon, the police, activating their official siren and lights, forced the motor vehicle to pull over and stop at the curb.
The defendant, who was the driver of the car, stepped out, walked toward the police officers and, in response to their request that he produce his driver’s license, informed them that he possessed none. Also, although later verification *563 proved that the automobile belonged to the mother-in-law of one of the two passengers and apparently was being used with her permission, the motor vehicle registration was not in their possession. The passengers were then directed out of the car and an ensuing "pat-down” of one of them resulted in the discovery of the five bullets in a clothes pocket that the police later described as exhibiting an undefined "bulge”. Contemporaneous search of the car itself revealed a gun under the front seat.*
It is conceded that, had the stop of the car which preceded the search not occurred, the possession of the gun and the clip would not have been discovered. The conclusion that the stop was an impermissible intrusion is compelled by People v Ingle (36 NY2d 413) where, in considerable detail, we clarified the circumstances under which police officers may stop a motor vehicle on a public highway. We there stressed the fact that such a stop is justified only when conducted pursuant to "nonarbitrary, nondiscriminatory, uniform” highway traffic procedures, or when there is specific cause or, at least, reasonable suspicion that a motorist is about to violate a law. As to the latter, we quoted the Supreme Court’s concordant language in which it spelled out that the cause must be one "based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion’ (Terry v Ohio, 392 US 1, 21)” (id., p 420).
The stop in the present case is to be distinguished from the exercise of the common-law right of inquiry of a pedestrian discussed in the majority opinion in People v De Bour (40 NY2d 210). For the "common-law power to inquire does not include the right to unlawfully seize” (People v Cantor, 36 NY2d 106, 114; see, also, People v Earl, 40 NY2d 941, revg on dissenting opn of Mr. Justice Shapiro at 50 AD2d 289, 290-294, cert den 431 US 943). Thus, except for routine checks to enforce automobile regulations (which neither side contends was the case here), our repeated decisions make abundantly clear that, absent at least a reasonable suspicion that its occupants had been, are then, or are about to be, engaged in conduct in violation of law, the stopping of an automobile by the police constitutes an impermissible seizure (People v Ingle, *564 supra, p 418; see, also, People v Allende, 39 NY2d 474; People v Martinez, 37 NY2d 662; People v Simone, 39 NY2d 818; cf. CPL 140.50).
In particular, "reasonable suspicion” has been aptly-defined as "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe that criminal activity is at hand” (People v Cantor, supra, pp 112-113). The requisite knowledge must be more than subjective; it should have at least some demonstrable roots. Mere "hunch” or "gut reaction” will not do. (Compare, e.g., People v Erwin, 42 NY2d 1064 [driving through a red light]; People v Singleton, 41 NY2d 402 [apparently switched license plates], with People v Martinez, supra, p 666, n 2; People v Simone, supra; People v Allende, supra; People v Ingle, 36 NY2d 413, supra; People v Cantor, supra; see, also, Pennsylvania v Mimms, 434 US 106 [operating vehicle with expired license plate justified stop]).
The record here is bare of any objective evidence of criminal activity as of the time of the stop from which flowed the chain of events culminating in the arrest. That the officers, as one of them put it, "felt that a crime was about to be committed”, sincere as this sentiment may have been, does not suffice. By itself, the seemingly innocuous act of the defendant and his companions in glancing at a bar, even if it could be argued that they were then driving through a "high crime neighborhood”, did not reasonably denote criminal conduct (cf. People v Julian, 43 NY2d 733; People v T., 39 NY2d 1028, revg on dissenting opn of Presiding Justice Stevens at 48 AD2d 779, 781). Nor did the fact that their brief pauses en route were two in number, one in compliance with the dictates of the stop sign, by any means turn what was unremarkable behavior quantitatively into conduct that had qualitative significance. And there was not even a suggestion that the conduct of the defendant or his companions had been furtive in character before the police interfered with their car’s progress (cf. Matter of Eugene J., 42 NY2d 1058).
To be sure the circumstances very well may have justified the police, as they pursued their law enforcement obligations, in continuing to keep the car under observation. Then, if patience rather than precipitancy had prevailed, the reward of good police work might well have been a seizure which the continued observation had rendered no longer devoid of a factual predicate for a founded belief that criminal conduct *565 was under way. But, at the premature juncture at which the police did in fact act in this instance, they had come upon no fruit ready for harvesting.
Subsequent events did indeed demonstrate that the officers’ hunch may well have been correct. But a search may not be justified by its avails alone. Constitutionally protected rights are not to be dispensed with in this case solely because the results of the improper search and seizure uncovered the fact that one or all of the persons who were its targets were armed with a deadly weapon. Almost any series of indiscriminate seizures is bound to produce some instances of criminality that might otherwise have gone undetected or unprevented. But were hindsight alone to furnish the governing criteria, a vital constitutional safeguard of our personal security would soon be gone.
Accordingly, the order of the Appellate Division should be reversed, the judgment vacated, and the indictment dismissed. And, since it appears from the record that the conviction in this case was the premise for a guilty plea to violation of probation granted defendant in a judgment rendered on an earlier and unrelated indictment, the plea and the amended judgment entered thereon should be vacated and the case remitted for further proceedings on that charge.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, judgment vacated and indictment dismissed, defendant’s plea of guilty to violation of probation and the amended judgment entered thereon vacated, and the case remitted to Nassau County Court for further proceedings on the charge of violation of probation.

 In view of our disposition of this appeal, other details concerning the events after the car was stopped and alleged trial errors pressed by appellant would appear to be irrelevant.