47 N.Y.2d 982 (1979)
The People of the State of New York, Appellant,
v.
Nathaniel Marner, Respondent.
Court of Appeals of the State of New York.
Argued June 8, 1979.
Decided July 9, 1979.
Eugene Gold, District Attorney (Peter Weinstein of counsel), for appellant.
Leon R. Port for respondent.
Chief Judge COOKE and Judges JASEN, GABRIELLI and WACHTLER concur; Judge JONES dissents and votes to affirm in a separate opinion in which Judge MEYER concurs; Judge FUCHSBERG taking no part.
*983 MEMORANDUM.
The order of the Appellate Division should be reversed.
At 4:30 A.M. on January 29, 1976 and shortly before the defendant was arrested, two police officers observed that a portion of the storefront at 510 Fulton Street in Brooklyn, occupied by the J. W. Mays Department Stores, had been shattered and that property was scattered and had been removed from the premises. At this hour the area is deserted, but is an area which has experienced a number of store burglaries. The officers secured the premises, notified the store's representative of the burglary, and when he arrived they resumed their patrol duties. They then observed an unmarked closed van (the only vehicle on the street) turning left onto Fulton Street some 200 feet from the scene of the prior burglary. The vehicle halted momentarily, and the officers saw an unidentified man suddenly appear and hurriedly enter the front of the van as a passenger. The van continued along, traveling a route that put it near the place where the police had first spotted it.
At this point the police stopped the vehicle and the driver, the defendant herein, exited from it. He appeared nervous and excited, and when asked for his license, which he produced together with a rental receipt for the van, he stated he was on his way to Red Hook which, as found by the hearing court, was in the opposite direction from that which the vehicle was traveling. The police officer, noting that the defendant was agitated, asked him, "what was in the truck?" Defendant replied, "No, nothing. You can't see in there". At this point the van's other known occupant was observed fleeing on foot. The defendant driver was handcuffed and the rear of the van was opened over the resistance of two males who were found inside. Also found in the van were burglar's tools and the proceeds of the burglary at the nearby establishment. In these circumstances, the initial stop by the police was permissible; and the actions of the van's driver and the fleeing passenger together with the knowledge that a burglary had only recently been committed in the area gave the police reason to suspect that the van's occupants had been engaged in conduct in violation of the law (see, e.g., People v Hutchinson, 47 N.Y.2d 823; People v Sobotker, 43 N.Y.2d 559, 563; People v Ingle, 36 N.Y.2d 413, 418). *984 The subsequent flight by the passenger when the van was stopped by the officers along with the other background information provided the necessary predicate for the more complete search of the van which uncovered the inculpatory evidence.
Inasmuch as the Appellate Division reversal was on the law (CPL 470.25, subd 2, par [d]), there must be a remittal for a review of the facts (CPL 470.40, subd 2, par [b]). Accordingly, the order of the Appellate Division should be reversed and the matter remitted to that court for review of the facts.
JONES, J. (dissenting).
I cannot agree that there was probable cause justifying the police stop of the moving van at 6:25 A.M. in this case. Accordingly, I would affirm the order of the Appellate Division granting the motion to suppress.
Although the police officers were aware that more than two hours before there had been a storefront robbery in the neighborhood, there was nothing to suggest any relationship between that robbery and the van which defendant was driving. Nor was there any aspect of the appearance of the van or the manner of its operation to arouse reasonable suspicion that it or its occupants might be engaged in criminal activity. The majority appears to predicate its conclusion on the confluence of several circumstances: that the area was one "which has experienced a number of store burglaries"; that the motor vehicle was "an unmarked closed van"; "the only vehicle on the street", "turning left onto Fulton Street some two hundred feet from the scene of the prior burglary"; that it "halted momentarily"; that the officers observed "an unidentified man suddenly appear and hurriedly enter the front of the van as a passenger"; that "The van continued along, traveling a route that put it near the place where the police had first spotted it" (p 983). I find nothing suspicious in these circumstances, appraised separately or when taken in combination. When asked whether there was "anything suspicious about what they were doing at the time", Officer Skelly, the only witness to testify at the suppression hearing, answered, "Just that the man appeared suddenly and got in beside the operator". Skelly added that he had not the faintest idea where the man had come from and knew nothing about him. Surely that "suspicion" did not warrant the stop.
The People do not contend, nor did the suppression court base its determination on a conclusion, that the police stop in this case was warranted under People v Ingle (36 N.Y.2d 413) *985 on the ground that the officers reasonably suspected a violation of the Vehicle and Traffic Law. (Cf. Delaware v Prouse, 440 US 648.) The suppression court explicitly based its denial of the motion to suppress on its application of our holding in People v De Bour (40 N.Y.2d 210). The Appellate Division, however, properly held that the De Bour principles  applicable to the exercise of the common-law right of inquiry of a pedestrian  may not be extended to apply to motor vehicle stops. Nor does the majority now rely on De Bour.
We have only recently been reminded that, with very limited exception, the Fourth Amendment requires that seizure of persons be supported by the long prevailing standards of probable cause and been told that such seizures are not to be judged by a balancing test such as that invoked by the suppression court in this case. (Dunaway v New York, 442 US ___, 47 USLW 4635.)
Because it is my opinion that the Appellate Division did not err in concluding that there was no showing of probable cause in this instance, I would affirm the order of that court.
Order reversed and the case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the memorandum herein.