OPINION OF THE COURT
Jerome F. Hanifin, J.
This is a claim for damages for false arrest, false imprisonment and malicious prosecution arising out of the arrest of *22 claimant by New York State troopers in Poughkeepsie, New York, on the morning of March 22, 1977, and his subsequent incarceration in the Dutchess County Jail.
After carefully reviewing all of the testimony and exhibits before it, the court makes the following findings:
On March 21, 1977, claimant was visiting a friend, Richard Roe, at his home in Arlington, Town of Poughkeepsie, New York. That evening, claimant drove to a bar on Main Street in Arlington with Richard Roe and another friend, Edward Denault, in Denault’s car. Claimant testified on cross-examinatian that he smoked some marihuana on the way to the bar.
After consuming some beer at the Arlington bar, claimant drove with his friends to a bar in Highland, across the Hudson River, in order to rendezvous with two women they had met at the Arlington bar. Unable to engage the interest of the women, the trio left the Highland bar and returned to Arlington sometime after midnight. Once again, claimant drove the car.
On the morning of March 22, 1977, Trooper Ackley and his partner, Trooper Woodcock, were on a regular tour of duty and at around 1:30 to 2:00 a.m. were in Arlington proceeding in their patrol car to a residence on Forbes Street. Forbes Street ran in an east/west direction and intersected Raymond Avenue which ran north/south. While stopped at the light at the intersection of Raymond Avenue and Main Street (near Forbes Street), Trooper Ackley first noticed claimant operating Denault’s car. Trooper Ackley proceeded to the Forbes Street residence and saw claimant for a second time driving towards Raymond Avenue.
After having been parked at the Forbes Street residence for approximately 10 to 15 minutes, Trooper Ackley sighted claimant for a third time driving towards Raymond Avenue. This time Trooper Ackley followed claimant and directed him to pull over his vehicle at the intersection of Raymond Avenue and Main Street near where Ackley first sighted claimant.
Trooper Ackley approached claimant in the vehicle and requested his license and registration. Claimant produced the vehicle registration, but not his license. He testified that he told the trooper that his license was at his friend’s house. At that point, Trooper Ackley smelled the odor of marihuana emanating from the car.
*23 Claimant and his two friends were directed to get out of the car and empty their pockets. The troopers searched the three men and, upon finding marihuana in the pocket of Richard Roe, placed him under arrest.
After the arrest of Roe, Trooper Ackley called in by radio to the Millbrook Trooper Barracks and requested a validation check on claimant’s license. Upon receiving a teletype computer printout from Albany, the radio dispatcher at Millbrook informed Trooper Ackley that claimant’s license was revoked.[1] Trooper Ackley arrested claimant for violation of section 511 of the Vehicle and Traffic Law.[2]
Claimant testified that he told the arresting officers that his license had been revoked because of a computer error but that it was subsequently reinstated. This, in fact, was the case. It appears that claimant’s license was reinstated some days prior to the arrest (claimant contends on February 14, 1977) and that the teletype printout relied on by Trooper Ackley in effecting the arrest was in error. Trooper Ackley could not recall whether claimant told him that his license had been renewed but he testified that such a statement would have made no difference to him because he had to rely on the printout.
Claimant was handcuffed and transported to the Troop K Barracks in Millbrook where he was taken inside and handcuffed to a desk.
After being detained at the Millbrook Barracks for approximately two to three hours, claimant was brought before a Town Justice and arraigned on the charge of driving with his license revoked. Claimant pleaded not guilty; bail was set at $500 and claimant was remanded to the Dutchess County Jail in lieu of bail. The Town Justice testified that he had no recollection of claimant or his arraignment.
Claimant remained incarcerated until approximately 7:00 p.m. on the evening of March 23, 1977. He testified that prior *24 to his second appearance before the Town Justice and his release, officers at the county jail showed him a copy of a printout of his driving record. According to claimant, the printout indicated that his license had been revoked and that immediately following that entry a second entry indicated that claimant’s license had been reinstated. This testimony was somewhat suspect because Trooper Ackley testified that the printout would not have stated that claimant’s license had been reinstated, rather this fact would be indicated by the symbol GO. In any event, there was no showing that the printout claimant saw was the printout relied on by Trooper Ackley.
The tort of false arrest is essentially the same as the tort of false imprisonment (Budgar v State of New York, 98 Misc 2d 588; Houghtaling v State of New York, 11 Misc 2d 1049). Every false arrest is itself a false imprisonment, with the imprisonment commencing at the time of the arrest (Budgar v State of New York, supra; Baisch v State of New York, 76 Misc 2d 1006).
In order to establish a cause of action for false imprisonment, claimant must show: (1) the defendant intended to confine him, (2) the claimant was conscious of the confinement, (3) the claimant did not consent to his confinement and (4) the confinement was not otherwise privileged (Broughton v State of New York, 37 NY2d 451, cert den sub nom. Schanbarger v Kellogg, 423 US 929). It is undisputed that the first three elements of this cause of action have been made out by claimant. Therefore, the court must determine whether the confinement was privileged.
A claimant’s obligation to show that the confinement was not otherwise privileged is rarely a problem for him whenever there has been an arrest or imprisonment without a warrant, since a presumption arises that such arrest and imprisonment were unlawful (Broughton v State of New York, supra). In such case, the burden is on the State to prove that the arrest was otherwise privileged or justified and that burden may be met by showing that probable cause existed at the time of the arrest (Broughton v State of New York, supra). A police officer is justified in arresting a person without a warrant for "(a) Any offense when he has reasonable cause to believe that such person has committed such offense in his presence; and (b) A crime when he has reasonable cause to believe that such person has committed such crime, whether in his presence or *25 otherwise” (CPL 140.10, subd 1). The term "reasonable cause” has been equated with "probable cause” as that term is used in the Fourth Amendment of the United States Constitution (People v Lombardi, 18 AD2d 177, affd 13 NY2d 1014).
Had claimant been stopped for a lawful traffic check, the court would agree with the State’s contention that Trooper Ackley had probable cause and therefore the arrest was privileged. While there is some authority that failure to exhibit a license on request creates a presumption of illegal operation which alone may suffice as probable cause (cf. Burden v City of Niagara Falls, 44 AD2d 754) certainly when the results of the computer validation check of claimant’s license were reported to Trooper Ackley he could reasonably have believed that claimant was driving in violation of section 511 of the Vehicle and Traffic Law. The fact that the arresting trooper relied on an erroneous computer report would not alter this result (cf. Romano v State of New York, Ct of Claims, May 8, 1979, Silverman, J.; Infurno v State of New York, Ct of Claims, May 3, 1978, Orlando, J.).
Nonetheless, the question remains whether the arrest of claimant was privileged when the initial stop of the vehicle for a traffic check was constitutionally impermissible. In 1975, the Court of Appeals in People v Ingle (36 NY2d 413, 419) clarified the circumstances under which police officers may stop a motor vehicle on a public highway: "an arbitrary stop of a single automobile for a purportedly 'routine traffic check’ is impermissible unless the police officer reasonably suspects a violation of the Vehicle and Traffic Law.” (Emphasis supplied.) "[M]ere whim, caprice, or idle curiosity” (supra, p 420) is not enough.
In Ingle, the defendant was observed driving a 1949 Ford in excellent condition, which apparently caught the eye of a State trooper. Although he had no information concerning the defendant or the car, the trooper decided to make what he described as a " 'routine traffic check’ ” (supra, p 415). Following the stop, marihuana was discovered in the car. In holding that the defendant’s conviction should be vacated and the evidence suppressed, the Court of Appeals stated that the stop was an "illegal seizure of defendant’s automobile and the evidence obtained by that seizure may not be used as evidence against him.” (Supra, p 421.)
Like the State trooper in Ingle, Trooper Ackley had no information concerning claimant or his vehicle. Trooper Ack *26 lev testified that he was "curious” upon seeing the claimant operating a vehicle three times within a 20-minute period and that it was this curiosity that motivated him to stop the vehicle for a "routine traffic check”. The State’s attorney contends in his posttrial memorandum of law that Trooper Ackley’s use of the word "curious” to describe his reason for stopping claimant’s vehicle was inappropriate to describe what, in fact, was reasonable suspicion. However, during his testimony, Trooper Ackley expressly denied that there was any reason other than curiosity for the stop.
Furthermore, even if the court were to infer that Trooper Ackley’s curiosity was not idle but was engendered by suspicion, the court finds that the circumstances existing at the time could not support a reasonable suspicion that claimant, or the other occupants of the vehicle had been, were then or were about to be engaged in conduct in violation of the law. (Cf. People v Sobotker, 43 NY2d 559.) "Reasonable suspicion” has been defined as "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand” (People v Cantor, 36 NY2d 106, 112-113). "The requisite knowledge must be more than subjective; it should have at least some demonstrable roots. Mere 'hunch’ or 'gut reaction’ will not do” (People v Sobotker, supra, p 564). Innocuous behavior alone will not generate a suspicion of criminal activity (People v De Bour, 40 NY2d 210).
Here there was nothing in the operation of the vehicle, its appearance, or the conduct of its occupants that could have created a reasonable suspicion that criminal activity was at hand. The facts show merely that Trooper Ackley sighted claimant operating a vehicle three times in the same neighborhood within 20 minutes at an early morning hour. There was even some indication at trial that absent claimant’s baldness, the vehicle may well have passed unnoticed.[3]
Therefore, the court finds that the stopping of the vehicle driven by claimant for a "routine traffic check” was a constitutionally impermissible seizure and that the presumption of illegal operation that arose upon claimant’s failure to produce a license and the results of the computer license check, which the State argues furnished probable cause for claimant’s *27 arrest, were derivative of the illegal seizure (cf. People v Ingle, 36 NY2d 413, supra). The issue remains whether there was probable cause for the arrest under these circumstances. The answer must be no because probable cause to make an arrest cannot be based on the fruits of an illegal search or seizure (cf. People v Corrado, 22 NY2d 308).
The case of Casler v State of New York (33 AD2d 305) illustrates this point. Casler involved a false arrest and imprisonment claim in the context of an automobile stop. A police officer stopped the claimant on a speeding charge. The officer saw a box in the vehicle’s glove compartment. He asked the claimant what the box contained and, upon claimant’s reply that it was a revolver, the officer opened the box and found a gun for which claimant had no permit. The claimant was arrested and incarcerated for illegal possession of a deadly weapon. Upon his petition for a writ of habeas corpus, claimant was released from jail after a finding that his arrest and detention for possession of an illegal gun were unlawful. In the action for false arrest, the court found that while claimant was lawfully stopped for speeding the officer had no grounds for suspecting claimant of any other crime or for searching claimant’s vehicle for evidence thereof. "On this traffic arrest, he had no cause to make such inquiry, and the result thereof was not a proper basis for arresting claimant” (supra, p 307). The court found that the officer lacked probable cause to arrest claimant on the gun possession charge and held that claimant was entitled to recover for false arrest and imprisonment.
Here Trooper Ackley would have had no cause to arrest claimant were it not for the results of the impermissible traffic check. While the teletype printout which indicated that claimant’s license was revoked was not contraband, it was the product of an illegal seizure (cf. People v Ingle, supra). It would be inconsistent for this court to recognize that a motorist can make out a cause of action for false arrest and imprisonment where, as in Casler, an arrest is based on the results of an impermissible search and yet hold that probable cause exists and no cause of action for false arrest or imprisonment is established where an arrest is based on the results of an equally impermissible seizure. Although the innocence of a claimant, in and of itself, does not warrant recovery of damages for false arrest (cf. Marks v Baltimore & Ohio R. R. Co., 284 App Div 251), it should be noted that, in Casler, the *28 initial stop of the claimant’s vehicle was lawful and the claimant was, in fact, in possession of a gun for which he had no permit. Here, the initial stop was illegal and claimant was, in fact, innocent of the charge for which he was arrested.
While it is true that reasonable or probable cause to make an arrest does not have to be such as to insure a conviction (People v Miner, 42 NY2d 937) it cannot be completely divorced from a reasonable expectation that a conviction can be obtained (cf. Williams v State of New York, Ct of Claims, April 13, 1979, Hanifin, J.).
Trooper Ackley is presumed to know the law. Therefore, he should not have believed that the stop was legal (although it was apparent to the court at the trial that Ackley thought the stop was legal) and he should have known that the information obtained as a result of the stop was tainted and could not survive an application to exclude. Thus, a holding that claimant’s arrest, based on the results of an illegal seizure of the automobile, was privileged would amount to a finding of probable cause in the absence of a reasonable possibility for conviction.
The court finds that as a result of the acts of Trooper Ackley claimant was falsely arrested and imprisoned and that the period of claimant’s detention from his original arrest to the time of his arraignment and commitment to the Dutchess County Jail was a wrong for which the State is liable (cf. Broughton v State of New York, 37 NY2d 451, supra; Worden v Davis, 195 NY 391; Williams v State of New York, 9 AD2d 415, affd 8 NY2d 886).
However, there was no malicious prosecution. Success in a malicious prosecution action requires a showing that the defendant commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served (Nardelli v Stamberg, 44 NY2d 500). The record is completely devoid of any such proof.
Claimant testified that while he was held at the Millbrook Barracks prior to arraignment (much of the time in handcuffs) he felt scared and humiliated. He claims that he was shaking and felt sick. No doubt claimant’s arrest and confinement was disconcerting and embarrassing. It does not appear, however, that claimant suffered much, if any ignominy as a result of the incident. He testified that his friends felt sorry for him and did not ridicule him for the arrest. Although claimant’s employer learned of the arrest (how, it is not clear) claimant *29 lost no work time and he testified that the employer was sympathetic to his plight. Apparently no one other than the State troopers (and possibly the Justice of the Peace) believed that claimant was driving with his license revoked.
Nonetheless, while claimant’s damages were not substantial, the impermissible stop did result in an interference with his freedom of movement and claimant is entitled to reasonable compensation for his false arrest and detention prior to arraignment and the mental anguish and humiliation attendant thereto.
In accordance with the foregoing decision, claimant is awarded the sum of $900 for all damages sustained.
All motions made at the time of trial upon which the court reserved decision are hereby now denied.

. Trooper Ackley later saw the teletype message when he returned to the Millbrook Barracks but after filling out claimant’s summons, he destroyed it, purportedly because it would be "useless in court.” This is unfortunate for while the original teletype message relied on by Trooper Ackley may not have been admissible to prove whether or not claimant’s license had, in fact, been revoked, it certainly would have been relevant on the issue of probable cause to arrest.

. Section 511 of the Vehicle and Traffic Law provides, inter alla, that any person operating a motor vehicle on a public highway while his license is suspended or revoked shall be guilty of a misdemeanor.

. Trooper Ackley testified that he could not recall the vehicle, but saw the bald driver three times.