Meyer, J.
(dissenting). The concept that the need to obtain information concerning numerous recent burglaries in a rural area authorizes an individual police officer to *490 stop every vehicle in the area, without information about or observation of the vehicle or its occupants which gives rise to reasonable suspicion of criminal activity involving it or them, is so inconsistent with prior precedent under both the Federal and the State Constitutions, that I cannot accept it. As is apparent from the failure of the majority to make any reference to the conduct of defendants or the vehicle prior to the conceded seizure of the vehicle (at p 487) and its repeated reference to a nonarbitrary, nondiscriminatory and uniform procedure for stopping all vehicles (at pp 485,488,489), the majority’s ruling leaves to the unconstrained discretion of the officer in the field (provided only that he takes the same action with respect to every vehicle) action which has heretofore been acceptable only after judicial issuance of an area warrant or the administrative adoption of standards, guidelines or procedures promulgated by higher governmental officials than the police officer in the field, or by an exigency, such as the immediate necessity to blockade an area against the escape of a kidnapper with his victim. I, therefore, respectfully dissent.
Clear from the testimony of Troopers Connors and Greaves* is it that Connors’ “plan” was to stop every vehicle in the area in order to inquire of any occupant who he was and what he was doing in the area, to see if he might be the burglar or have been a witness to any of the burglaries. Brown v Texas (443 US 47, 52) flatly held that as to an individual whose activity was no different than that of others in the neighborhood, a stop the purpose of which was to ascertain identity and for which the officers lacked reasonable suspicion to believe the person stopped to be engaged or have been engaged in criminal conduct violated the Fourth Amendment (443 US, at p 53), notwithstanding that the neighborhood was one frequented by drug users {id., at p 52).
That the Supreme Court will not approve the procedure now sanctioned by the majority of this court is strongly suggested by its Per Curiam holding in Reid v Georgia (448 US 438, 440), that: “The Fourth and Fourteenth Amend- *491 merits’ prohibition of searches and seizures that are not supported by some objective justification governs all seizures of the person, ‘including seizures that involve only a brief detention short of traditional arrest. Davis v. Mississippi, 394 U. S. 721 (1969); Terry v. Ohio, 392 U. S. 1, 16-19 (1968).’ United States v. Brignoni-Ponce, 422 U. S. 873, 878 (1975). While the Court has recognized that in some circumstances a person may be detained briefly, without probable cause to arrest him, any curtailment of a person’s liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity” (italics supplied). Even though the purpose for stopping an individual to obtain identification is the prevention of crime, if there is no overweening emergency and the stop is not based on objective criteria for believing that the person stopped is involved in criminal activity, the risk of arbitrary and abusive police practices exceeds tolerable Fourth Amendment limits (Brown v Texas, 443 US 47, 52, supra; but see United States v Martinez-Fuerte, 428 US 543, 560, n 14). Some quantum of individualized suspicion is a prerequisite in order “to assure that the individual’s reasonable expectation of privacy is not ‘subject to the discretion of the official in the field’ ” (Delaware v Prouse, 440 US 648, 655).
Absent an emergency of the type above referred to, only two exceptions to these requirements have been recognized by the Supreme Court. Without finally deciding the question, the court has in United States v Martinez-Fuerte (428 US 543, 564-566, supra) and United States v Brignoni-Ponce (422 US 873, 882, n 7, supra) discussed the possible availability of a judicially issued “area” warrant. It has also held that when the decision to “seize” is made not by the officer in the field but through a plan devised administratively and “embodying explicit, neutral limitations on the conduct of individual officers” (Brown v Texas, 443 US 47, 51, supra) and the need for such stops in furtherance of the public interest has been demonstrated, checkpoint stops, as distinct from roving patrols of the type undertaken by Trooper Connors in the instant case, are permissible (Delaware v Prouse, 440 US 648, 663, supra; United States v Martinez-Fuerte, 428 US 543, 562, supra; United *492 States v Brignoni-Ponce, 422 US 873, 882-884, supra). Here not only was the procedure which the majority holds constitutional devised by the field officer alone, but also there has been no showing of the efficacy of that roving patrol procedure as compared with other available procedures to achieve the end for which instituted (cf. Delaware v Prouse, supra, at pp 658-661).
New York decisions provide no greater support for. the majority’s conclusion. People v Schanbarger (24 NY2d 288, 291) held a trooper’s testimony that at 3 a.m. he observed defendant in an area in which there had been “frequent burglaries” was “clearly insufficient to establish any basis for a reasonable suspicion that the defendant might be engaged or was about to engage in crime” (italics in original). People v Cantor (36 NY2d 106,112-114) held a seizure essentially similar to that which occurred in the present case to be without justification, the record being barren of specific and articulable facts amounting to “reasonable suspicion that such person is committing, has committed, or is about to commit a crime.” People v Ingle (36 NY2d 413), as explained in People v Sobotker (43 NY2d 559, 563), stressed that a stop of a motor vehicle on a public highway “is justified only when conducted pursuant to ‘nonarbitrary, nondiscriminatory, uniform’ highway traffic procedures [italics added], or when there is specific cause or, at least, reasonable [italics in original] suspicion that a motorist is about to violate a law.” Sobotker’s holding was that the act of defendant and his companions in slowing down and glancing at first one bar and then another did not furnish reasonable suspicion for the stop of defendant’s vehicle even though a number of burglaries had recently been reported in the vicinity. And as recently as People v Howard (50 NY2d 583, 590) we reaffirmed the Schanbarger and Sobotker rulings, while holding that the carrying by the male defendant of a woman’s vanity case and his furtive actions when he became aware that he was being observed provided sufficient basis for an inquiry, but no more. Here, of course, no action of the defendants provides any basis for inquiry much less the seizure of defendants and their vehicle, which the majority concedes (at p 487) occurred.
*493 The procedure followed in the present case was not a nonarbitrary, nondiscriminatory, uniform highway traffic procedure. It was, by the majority’s concession clearly a seizure, rather than a stop, and was justified neither by any emergency, nor reasonable suspicion concerning defendants, nor a judicially issued warrant nor an administratively approved checkpoint plan. It was, therefore, unconstitutional.
The order of the Appellate Division should be reversed, the convictions vacated, the evidence and statements suppressed and the indictment dismissed.
Chief Judge Cooke and Judges Jasen, Gabrielli and Jones concur with Judge Wachtler; Judge Meyer dissents and votes to reverse in a separate opinion in which Judge Fuchsberg concurs.
Order affirmed.

 The relevance of such testimony is established by the Supreme Court’s decisions in Brown v Texas (443 US 47, 52); Delaware v Prouse (440 US 648, 650), and United. States v Brignoni-Ponce (422 US 873, 875, 886, n 11).