OPINION OF THE COURT
Lila F. Levy-Dino, J.
On August 8, 1992, defendant, Gary Martin Clark, was *840 charged with violation of sections 1192 (3) and 1192 (2) of the Vehicle and Traffic Law, as well as a violation of section 511 (3) of the Vehicle and Traffic Law, and section 220.03 of the Penal Law.
The People reduced the charges to violation of section 1192 (2) and section 511 (2) (a) (i) of the Vehicle and Traffic Law. On October 21, 1992, section 220.03 was dismissed when the lab analysis revealed that the contents of a foil packet contained an antibiotic.
The defendant moved to suppress the evidence of a breathalyzer test given on the basis that the police did not have probable cause for the stop and for the subsequent search and seizure.
FINDINGS OF FACTS
The police officer, William Van Inwegen, testified that he was on routine patrol on August 8, 1992, at about 9:00 p.m., in a marked vehicle. At about 9:00 p.m., he states he saw defendant’s vehicle parked at the curb on Front Street in the City of Port Jervis. Alongside the vehicle, on the passenger’s side, the officer observed a female kicking the car and flailing her arms. He was approximately 100 feet away. The officer turned his vehicle around in order to determine the problem with the woman and the vehicle. At that moment, the vehicle (a black Pontiac) left the curb at a high rate of speed and proceeded west on Front Street. The officer proceeded to pull the car over, about 100 yards up the street, to see what the problem was. As the officer proceeded to follow the vehicle, he observed the woman still standing on the sidewalk flailing her arms.
When the vehicle was pulled over, the defendant exited his vehicle. The officer testified he smelled alcohol on defendant’s breath and that the defendant had watery red eyes. The defendant was asked what was going on. The defendant told the officer his girlfriend was angry because he was drinking again. He stated he had one drink at the New Bauer. The officer testified the defendant slurred his speech and had impaired motor coordination.
The officer then asked defendant to perform field tests, and the defendant refused. The officer determined that defendant was intoxicated and arrested him. The officer then proceeded to give the defendant his Miranda rights and DWI warning rights by reading the same from his card. The officer stated *841 the defendant first refused to take the breathalyzer test but then later agreed.
At the police station, the defendant consented to the breathalyzer test. After the defendant was advised of the reading, the defendant again stated he had only one beer.
The oflicer admitted that he could not hear what the woman was saying when he observed her kicking the car and yelling, and further, that the vehicle did leave the curbside in the correct lane of traffic. The officer did not issue any traffic tickets as the basis for the stop. On his bill of particulars, the officer wrote: "Woman kicking car” as the reason for the stop.
The officer testified that he did not recall why he searched the car, but he did find a foil packet with a white substance in defendant’s wallet. The substance turned out to be an antibiotic, and the charge of a violation of section 220.03 of the Penal Law was dismissed.
The defense called the woman who was on the sidewalk to the stand. She identified herself as Donna DeGroat. Ms. DeGroat is defendant’s girlfriend, and they have known each other for three years and have lived together for about one year. The parties still live together at this time. Ms. DeGroat states that on August 7, 1992, the defendant was to take her to dinner. When defendant failed to come home, that evening, at about 8:30 p.m., she found herself in downtown Port Jervis on Front Street and saw the defendant’s vehicle. She stated she was angry because he had failed to take her to dinner as promised. She approached the vehicle and started to yell at the defendant, who was seated in the car and thence commenced kicking the car. She testified that the defendant stayed in the vehicle during their argument and that when the conversation ended, she turned toward the parking lot to get her own car. Ms. DeGroat testified that when she left the parking lot in her car she noticed the police had pulled defendant over. She stopped her car at the scene and saw the defendant hand the officer his insurance card.
The witness saw the officer look into defendant’s car and ask if he could search it, and the defendant replied "yes”. She also overheard the officer ask defendant if he had anything to drink. The defendant admitted to drinking one beer. The defendant consented to the search, and the officer found the foil packet. Defendant was placed under arrest and put in the police vehicle. The witness stated that the officer did not request field tests and did not arrest the defendant for driving while intoxicated.
*842 The witness further stated that the defendant’s speech was normal and not slurred and, in her opinion, he was not drunk.
On cross-examination, the witness admitted the defendant had left their home at 6:00 p.m. and did not return to take her to dinner. When she saw the defendant, at 8:30 p.m., the witness admitted that she "lost it” and proceeded to kick the passenger’s side of the car.
The defendant then took the stand to state that on August 7, 1992, he returned home from work, at about 4:00 p.m. At 6:00 p.m., he left his house and visited various people. He arrived at the bar known as Station 9 at 8:15 p.m.; had one beer and states that he left at about 8:30 p.m. to go home. The witness denies having consumed any more than one beer and further denies that he was at the New Bauer bar.
The defendant stated that he saw his girlfriend as he was pulling out of the parking lot and that she yelled at him and kicked his car. The defendant admitted the officer did not know him prior to the encounter. The defendant also denied the officer asked him to take any field sobriety tests; that the officer handcuffed and arrested him when the search turned up the foil packet.
CONCLUSIONS OF LAW
The issue in this case is: Was the investigative stop of an automobile operated by defendant a violation of his constitutional rights against unreasonable searches and seizure? The stop was not the result of a Vehicle and Traffic Law violation. The defendant was charged with violations of section 1192 (2) and (3), and section 511 (3) of the Vehicle and Traffic Law and section 220.03 of the Penal Law.
In People v Sobotker (43 NY2d 559, 563), it was held that in order for the stop to be legal, the officer must have "at least a reasonable suspicion that its occupants had been, are then, or are about to be, engaged in conduct in violation of law”. In People v Ingle (36 NY2d 413, 415), the Court of Appeals detailed and clarified the circumstances under which a police officer may stop a motor vehicle on a public highway. The stop must be conducted pursuant to "nonarbitrary, nondiscriminatory, uniform [highway traffic] procedures.”
The United States Supreme Court, in Terry v Ohio (392 US 1, 21), spelled out that the probable cause for a stop must be based on "specific and articulable facts which, taken together *843 with rational inferences from those facts, reasonably warrant [the] intrusion”.
In the present case, the police officer, on routine patrol, at 9:00 p.m., observed a female kicking a car and waiving her arms at the vehicle, and the vehicle left the curb with the female still standing on the sidewalk flailing her arms.
The officer, not knowing what had transpired, elected to pull the vehicle over to make inquiry. The City of Port Jervis borders on the States of Pennsylvania and New Jersey. The officer chose to pursue the vehicle. In the opinion of this court, the officer’s action was based on a reasonable suspicion that the motorist had violated the law. The actions of the officer were based on specific and articulable facts, and the intrusion was reasonable.
The Court of Appeals, in People v Hollman (79 NY2d 181), discussed police initiated encounters and the common-law right of inquiry. While Hollman does not deal with a motorist, it is the opinion of this court that the basic rules enunciated there apply to the instant case.
In Hollman (supra), the Court reaffirmed the right of inquiry. The officer observed a situation upon which he determined that criminality may be afoot. In the instant case, the officer observed a female, at 9:00 p.m., kick the side of a motor vehicle; yell at the occupant; and the motor vehicle left the area. The officer rapidly assessed the situation and determined that he should stop the motor vehicle and make his inquiry.
In People v De Bour (40 NY2d 210, 213), the Court of Appeals framed the issue as "whether or not a police officer, in the absence of any concrete indication of criminality, may approach a private citizen on the street for the purpose of requesting [the] information”. They held the approach and questioning were permissible because they were supported by an articulable reason. In the case at bar, it is the opinion of this court that the approach and questioning were permissible since it was supported by an articulable reason, namely a woman yelling at and kicking a motor vehicle which left the area.
When the officer commenced his common-law right of inquiry to determine what had happened, he smelled alcohol and observed the defendant had watery red eyes.
A police officer has a right to request information while discharging his law enforcement duties. The encounter lacked *844 harassment or intimidation. The approach of the officer was reasonable and constituted a request for information.
In People v De Bour (40 NY2d 210, 219), the Court stated that the officers may inquire if they do not act on whim or caprice and have an articulable reason not necessarily related to criminality for making the approach.
The underlying facts are nonrefuted. It is the opinion of this court that the officer acted without whim or caprice and had an articulable reason to make the stop. The stop was valid, and the court finds the defendant was given his Miranda and DWI warnings. The motion to suppress is denied.