People v McMaster (2004 NY Slip Op 50483(U))

[*1]

People v McMaster

2004 NY Slip Op 50483(U)

Decided on June 3, 2004

Justice Court Of Webster, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 3, 2004

Justice Court of Webster, Monroe County
The People of the State of New York -vs
against
Kevin McMaster, Defendant.
00452-04

Michael Green, Esq. Monroe County District Attorney, Aaron Sperano, Esq., of Counsel
Trevett, Lenweaver & Salzer, P.C., Clark Zimmermann, Jr., Esq., of Counsel, Attorneys for the
Defendant.

Thomas J. DiSalvo, J.
History of the Case
DiSalvo, J. On January 5, 2004 at approximately 7:10 P.M. the defendant was driving
his vehicle on eastbound on Coastal View Drive in the Town of Webster. Sgt. Small of the
Webster Police Department was traveling westbound on the same road. According to his report,
the officer was "conducting a special attention in the area of the construction site on Coastal
View Drive". Apparently, there had been a number of burglaries and larcenies in the area in
general and at a nearby construction site in particular. As the defendant's vehicle approached the
officer's marked patrol vehicle, Sgt. Small activated his emergency lights, in an effort to stop
said car. The defendant stopped his vehicle before passing the officer's vehicle. Sgt. Small then
approached the defendant's car, where he observed three white males in said car. The driver was
the defendant, Kevin McMaster. Sgt. Small stated in the addendum to the Drug Influence
Evaluation that he stopped defendant's vehicle "Due to the rash of crimes in the immediate area."
Upon being approached by the officer, the defendant opened the driver's window to
[*2]
converse with Sgt. Small. The defendant advised the officer that he was "Just driving around".
The officer's report went on to indicate that he then made certain observations. He observed a
haze of smoke in the vehicle and a pungent smell of marijuana. The defendant had bloodshot
and watery eyes. He also thought that the defendant's speech was slurred. Sgt. Small then asked
for identification of all the individuals in the car. He then asked if there was any "dope" in the
car. Defendant, according to the officer, indicated that there was a "blunt" on the floor by
defendant's right foot. The officer requested that the defendant pick it up and hand it to him.
The defendant complied with said request. The occupants in the vehicle indicated that there had
been more marijuana in the vehicle prior to the stop, but they had smoked it. Upon further
questioning, the occupants of the vehicle produced a pipe with what appeared have a marijuana
residue.
The defendant was removed from his vehicle and placed in the rear of the police car. The
defendant was asked to stick out his tongue, which allegedly exhibited a green tint. The officer
asked the defendant how much marijuana he smoked. The defendant responded by saying
"About three".
Sgt. Small then called upon Officer Rose, of the Webster Police, who is a drug
recognition expert. The defendant was moved to the right rear passenger seat of the police car.
The door to the car was open and the defendant sat with legs out of the car. Upon being briefed,
Officer Rose took custody of the defendant and transported him to the Webster Police
Department. Further examination of the vehicle by Sgt. Small revealed further evidence of
marijuana and marijuana paraphernalia. The vehicle belonged to one of the other occupants, but
due to the condition of said other occupants, said vehicle was towed. The other two occupants
[*3]
were charged with Unlawful Possession of Marijuana, P.L. 221.05. They were released after
having been issued appearance tickets.
Facts of the Case.
After transporting the defendant to the Webster Police Department. Officer Douglas
Rose then completed a Drug Influence Evaluation. Upon completion of same the defendant was
charged with Driving While Ability Impaired by Drugs, in violation of Vehicle and Traffic Law,
Section 1192(4) and Unlawful Possession of Marijuana, in violation of P.L. 221.05. The
defendant was arraigned in Webster Town Court on January 21, 2004. The matter was
eventually adjourned for argument of motions on April 16, 2004. Defense counsel, in his
omnibus motions, argued that the stop of the defendant was unlawful and that all the evidence
seized as a result of said arrest should be suppressed. Defense counsel maintains that the stop
violated C.P.L. 140.50(1), the 4th Amendment of the U.S. Constitution and Article I,
Section 12 of the New York State Constitution. The parties do not contest the facts of the
stop nor of the subsequent arrest of the defendant.
Issues Presented.
Is an informational stop of a moving vehicle in a high crime area justified?
Should any evidence seized as a result of the stop of defendant's vehicle be suppressed?
Legal Analysis.
Criminal Procedure Law Section 140.50(1) states as follows:
In addition to the authority provided by this article for making an arrest without a warrant, a police officer may stop a person in a public place located within the geographical area of such officer's employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of [*4]his conduct.

In the instant case, the defendant was not originally stopped for any specific reason, other
than the officer's curiosity as to the presence of the defendant's vehicle on the street in question.
As previously indicated the area where the defendant was stopped was in a high crime area. The
officer thus was suspicious of three young men seated in a vehicle driving through an area where
there was a great deal of construction taking place. The construction equipment and material had
been a tempting target of burglary and larceny. Thus Sgt. Small stopped the vehicle in question
to determine the identity of its occupants and inquire of their intentions.
Reference must be first be made to People v. Ingle, (1975) 36 N.Y.2d 413; 369 N.Y.S.2d
67. In that case the Court of Appeals states that "All that is required is that the stop be not the
product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific
and articulable facts which, taken together with rational inferences from those facts reasonably
warrant [the] intrusion (Terry v. Ohio, 392 US 1, 21).'" Supra at 420. The Supreme Court,
Appellate Division, Fourth Department further clarified this issue in People v. Washburn, (2003)
309 A.D.2d 1270, 765 N.Y.S.2d 76. In that memorandum decision, the court held that

"County Court erred in determining that the police were justified in stopping the motor vehicle driven by defendant to request information. The investigative stop of a motor vehicle "is to be distinguished from the exercise of the common-law right of inquiry of a pedestrian discussed in the majority opinion in People v. De Bour, 40 N.Y.2d 210[, 386 N.Y.S.2d 375, 352 N.E.2d 562]. For the 'common-law power to inquire does not include the right to unlawfully seize' " (People v. Sobotker, 43 N.Y.2d 559, 563, 402 N.Y.S.2d 993, 373 N.E.2d 1218, quoting People v. Cantor, 36 N.Y.2d 106, 114, 365 N.Y.S.2d 509, 324 N.E.2d 872). The People contend that the stop was justified under People v. Ingle, 36 N.Y.2d 413, 369 N.Y.S.2d 67, 330 N.E.2d 39, because it was "not the product **77 of mere whim, caprice, or idle curiosity * * * [but was] based upon 'specific and articulable facts' " (id. at 420, 369 N.Y.S.2d 67, 330 N.E.2d 39, quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889). Since Ingle, however, the Court of Appeals has made it "abundantly clear" (Sobotker, 43 N.Y.2d at 563, 402 N.Y.S.2d 993, 373 N.E.2d 1218) that "police stops of automobiles in this State are legal only pursuant to routine, [*5]nonpretextual traffic checks to enforce traffic regulations or where there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (People v. Spencer, 84 N.Y.2d 749, 753, 622 N.Y.S.2d 483, 646 N.E.2d 785, cert. denied 516 U.S. 905, 116 S.Ct. 271, 133 L.Ed.2d 192; see People v. May, 81 N.Y.2d 725, 727, 593 N.Y.S.2d 760, 609 N.E.2d 113) or where the police have "probable cause to believe that the driver * * * has committed a traffic violation" (People v. Robinson, 97 N.Y.2d 341, 350, 741 N.Y.S.2d 147, 767 N.E.2d 638)."
The stop made by Sgt. Small is generally referred to as an "informational stop". The
controlling case in this area is People v. Spencer (1995) 84 N.Y.2d 749; 622 N.Y.S.2d 483. The
court declared that "But we have made clear that the right to stop a moving vehicle is distinct
from the right to approach the occupants of a parked vehicle...." Supra at 753, 486. In other
words, the police are faced with a higher standard when it comes to stopping a moving vehicle to
inquire of its occupants, as opposed to the stopping and inquiring of a pedestrian. The court
reiterated the idea that "'the obvious impact of stopping the progress of an automobile is more
intrusive than the minimal intrusion involved in stopping a pedestrian' and constitutes 'at least
a limited seizure subject to constitutional limitations.'" Supra at 752, 485. The distinction is
based on the concept that the stop of a moving vehicle to obtain information involves a seizure.
Whereas the mere making of an inquiry to a pedestrian does not amount to a seizure in and of
itself.
Conclusions of Law.
In the instant case, the police officer had no articulable basis to stop the defendant's
vehicle. The officer observed no violation of law being committed. He had no reason to believe
any violation of law had been committed or was about to be committed. The sole basis for the
stop was curiosity on the part of the officer. The mere fact that the location of the stop of the
defendant's vehicle was in a high crime area is not a basis to believe the defendant was also
[*6]
committing or had committed a crime. See People v. Jackson, (1997 4th Dept.) 241 A.D.2d 943,
661 N.Y.S.2d 336. Therefore, there was no reasonable cause to stop, inquire or search the
defendant. The stop violated C.P.L 140.50(1), the 4th Amendment of the U.S. Constitution and
Article I, Section 12 of the New York State Constitution. The Court of Appeals in People v.
Spencer 84 N.Y.2d at 759, 622 N.Y.S.2d at 489, indicated the 4th Amendment to the U.S. Constitution would be violated if "...ostensibly law-abiding citizens under no suspicion could be
pulled over any time the police had reason to believe they might have information relevant to a
past crime." The fact that evidence of a violation of law was obtained by the police subsequent to
the stop of defendant's vehicle does not rehabilitate the stop ab initio. Said evidence obtained by
the police must be suppressed as "fruit of the poisonous tree". In addition, the accusatory
instruments, charging the defendant with Driving While Ability Impaired by Drugs, Vehicle &
Traffic Law 1992(4) and Unlawful Possession of Marijuana, Penal Law 221.05, must be
dismissed because of the lack of reasonable cause to stop the defendant.
This constitutes the decision and order of this court.
Dated: Webster, New York
June 3, 2004 
E N T E R ,
_______________________________________
Hon. Thomas J. DiSalvo
Webster Town Justice