■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD HOGLEN, Appellant.—Judgment unanimously reversed on the law, defendant's motion granted, the sixth count of the indictment dismissed, and new trial granted on the remaining counts. Memorandum: We previously reserved decision on this appeal and remitted the matter for a suppression hearing *(see, People v Hoglen,* 152 AD2d 990). Following the hearing, County Court denied defendant's suppression motion. We reverse and grant the motion.

The evidence at the hearing established that at approximately 3:30 A.M. on May 15, 1987, Officer David Fox, while on routine patrol in the Village of Fayetteville, observed a station wagon parked on the shoulder of a road in front of an apartment building. His attention was drawn to the vehicle because the building was predominantly occupied by older people, there had been larcenies in the building during the previous month, and the vehicle "seemed out of place." The officer approached the station wagon and observed a male, who appeared to be 16 or 17 years old, sitting on the driver's seat and another male, who appeared to be 18 or 19 years old, sitting on the rear seat. Using his flashlight, he viewed the interior of the vehicle and saw nothing unusual. In response to inquiries by the officer, the front seat occupant identified himself as Bruce Chapman, stated his date of birth, and explained that he was "waiting for a friend who was visiting her aunt at the apartment building." The officer testified that he "doubted [Chapman's] story about waiting for a friend visiting an aunt at that time of the morning". Upon returning to his vehicle, the officer radioed the location and plate number of the station wagon and reported that he was checking a suspicious vehicle. In response, the officer was informed that the vehicle was registered to Maria Chapman of Putnam Street, and that no one at the Putnam Street address had any prior arrests.

Still sensing that "something was not right", the officer drove his vehicle approximately 1/10 of a mile to the premises of the Fayetteville Fire Department. He parked his car and continued to observe the station wagon. After four or five minutes, he observed that the headlights of the station wagon came on and the vehicle proceeded toward his position. The station wagon stopped at a stop sign and turned left. The

officer "thought" that he saw four people in the car and because he had "inferred" from his conversation with Chapman that there would be but three people in the group, he followed the vehicle. After verifying the presence of four occupants, the officer stopped the vehicle and questioned them. Again using his flashlight, he saw jewelry, a jewelry box drawer and two bottles of liquor on the rear floor. The four occupants, including defendant, were transported to the Town of Manlius Police Department where defendant was further questioned. Defendant admitted that he entered the apartment of Dorothy Golly and tied her with various items of clothing while his accomplice, Louise Pitcher, who was Ms. Golly's niece, searched the house for valuables. Ms. Golly was later found dead of asphyxiation.

Although Officer Fox had previously stated at trial that he stopped the vehicle "because the driver appeared to be young" *(People v Hoglen,* 152 AD2d 990, *supra),* he gave no such testimony at the hearing and, in denying defendant's motion, the suppression court did not rely upon the driver's age or appearance to justify the stop.

There can be no doubt on these facts that when Officer Fox forcibly stopped the station wagon, he seized the occupants riding in it *(see, Delaware v Prouse,* 440 US 648; *People v Sobotker,* 43 NY2d 559; *People v Rivers,* 129 AD2d 983, 984). It is also well settled that a person may not be stopped in a public place by a police officer unless the officer has "reasonable suspicion that such person is committing, has committed, or is about to commit a crime (CPL 140.50)" *(People v Cantor,* 36 NY2d 106, 112; *see also, People v La Pene,* 40 NY2d 210, 223). A police officer's suspicion may be characterized as reasonable when it is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" *(Terry v Ohio,* 392 US 1, 21; *People v Sobotker, supra,* at 563; *People v Ingle,* 36 NY2d 413, 420).

The record here is bare of any objective credible evidence to support a reasonable suspicion that the occupants of the vehicle "had been, were then, or were about to be engaged in criminal activity" *(People v Rivers,* 129 AD2d 983, 984, *supra).* The mere suspicion of the police officer that "something was not right" was insufficient to justify the seizure of this defendant. There was no evidence of a violation of the motor vehicle law; the officer did not observe the defendant or any of the vehicle's occupants engage in any criminal activity; he had no knowledge that any of the occupants had a history of

criminal conduct; he lacked independent knowledge or information from an informer indicating that a crime had been committed; and it cannot be said that the conduct of the vehicle's occupants was in any way evasive or furtive *(see, People v Cantor,* 36 NY2d 106, 113, *supra; see also, People v Johnson,* 64 NY2d 617, 619; *People v Sobotker,* 43 NY2d 559, 564, *supra).*

The hearing court relied heavily upon the significance of the officer's testimony that there were four, rather than three, occupants of the vehicle. In our view, the presence of four occupants in the vehicle, when combined with the other information possessed by the police officer at the time of the stop, was at least as compatible with the occupants' innocence as with their guilt *(see, People v Rivers, supra,* at 984; *see also, People v Carrasquillo,* 54 NY2d 248, 252; *People v Corrado,* 22 NY2d 308).

We conclude, therefore, that the seizure of defendant was unlawful and the fruits thereof, consisting of defendant's statement *(see, People v Strassner,* 142 AD2d 954, 955, *lv denied* 72 NY2d 962) and the jewelry and liquor seized from the station wagon, must be suppressed *(see, People v Cantor,* 36 NY2d 106, 114, *supra).* Since the jewelry and liquor are the subject of the count of the indictment charging defendant with criminal possession of stolen property in the third degree, that count must be dismissed. A new trial is granted on the remaining counts of the indictment *(see, People v Bouton,* 50 NY2d 130, 136). (Resubmission of appeal from judgment of Onondaga County Court, Burke, J.—murder, second degree.) Present—Dillon, P. J., Doerr, Green, Lawton and Lowery, JJ.