■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEROME SUNLEY, Appellant.—Judgment reversed on the law, motion granted and indictment dismissed. Memorandum: Defendant was convicted of criminal possession of a stolen credit card. He contends on appeal that the court erred in refusing to suppress the credit card and statements made to the police, which he argues were the fruit of an unlawful automobile stop. We agree.

Defendant was seized when the automobile was stopped *(see, Delaware v Prouse,* 440 US 648; *People v Sobotker,* 43 NY2d 559).* In order to justify the stop, the police needed reasonable suspicion, based on specific and articulable facts, that defendant had committed a crime *(see, People v Cantor,* 36 NY2d 106, 112-113; *People v Ingle,* 36 NY2d 413, 418, 420).

The hearing court erred in concluding that the police action "was not an arrest which requires a basis of probable cause 'but a permissible incident of a lawful stop' " quoting *People v Hicks* (68 NY2d 234, 239). That conclusion merely begs the critical question whether the stop was lawful. *Hicks* was concerned with the propriety of a limited detention following a lawful stop. The stop in *Hicks* clearly was proper because it was based on a police radio report that a robbery had occurred at a nearby factory and contained a detailed description of the suspects and the car in which they were riding. The information possessed by the police in the instant case was significantly weaker and less reliable and is insufficient to provide such reasonable suspicion *(see, People v Hoglen,* 162 AD2d 1036; *People v Rivers,* 129 AD2d 983, 984).

The police had seen four people in a car parked at Northtown Plaza far from the stores. One occupant got out and walked toward a jewelry store, looked in and kept walking. She returned to the car and a second occupant, a male, got out and went into the jewelry store. Because that person kept looking over his shoulder, the police considered his behavior suspicious and a plainclothes police officer entered the store to observe him. The clerk was occupied with defendant, an apparent customer. After defendant left, the officer asked the clerk about him and was told that he had tried to buy an $800 ring but did not want to wait to have it sized, a fact she considered unusual. She also said that something went wrong

with defendant's American Express authorization and that he left to obtain more identification from his car. The police observed defendant get into the parked car they had seen earlier, which then contained five people, and the car left the plaza.

While the police followed the car they radioed the dispatcher to find out from the store clerk whether any merchandise had been purchased. They were told that no purchase was made because the charge was not authorized by American Express after defendant was unable to answer some personal questions. The police were told the name on the American Express card.

With this information, and suspecting the possibility of a stolen credit card, the police stopped the car in which defendant was a passenger and questioned the occupants. The propriety of the stop must, of course, be determined based on what the police knew then and not on information learned later.

Denial of credit card authorization occurs for a variety of reasons, many of them susceptible of innocent interpretation. Failure to have a ring sized and failure to return with further identification are subject to innocent interpretation *(see, People v Carrasquillo,* 54 NY2d 248, 252; *People v De Bour,* 40 NY2d 210, 216-217; *People v Corrado,* 22 NY2d 308). The police did not know defendant's name when they made the stop, did not know whether it was the same as that appearing on the card, and had not yet determined that the person whose name was on the card had had his wallet stolen. The police cannot justify a stop based upon vague and unparticularized hunches *(see, People v Cantor, supra,* at 113) and that is all the police possessed here when they stopped the vehicle. Thus, the seizure of defendant was unlawful and the fruits thereof must be suppressed and the indictment dismissed *(see, People v Cantor, supra,* at 114; *People v Strassner,* 142 AD2d 954, 955).

All concur, except Callahan, J. P., and Doerr, J., who dissent and vote to affirm, in the following Memorandum.

Callahan, J. P., and Doerr, J. (dissenting). Respectfully, we dissent. Reasonable suspicion has been defined as "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe that criminal activity is at hand" *(People v Cantor,* 36 NY2d 106, 112-113). As this Court has pointed out, the concept of reasonable suspicion "deals with probabilities and not with hard certainties" *(People v Johnson,* 102 AD2d 616, 621).

From our review of the facts, we conclude that the police action of stopping the vehicle to make inquiry was reasonable in its inception. At the time they decided to follow the vehicle, the detectives knew that defendant had entered a jewelry store, ostensibly to purchase an $800 man's diamond ring. Defendant appeared to be in a hurry, not wanting to take the time to have the ring sized. Defendant presented an American Express card, but the transaction did not go through. Defendant told the sales clerk that he was going to his car for some additional identification, but he did not return; rather, defendant entered a parked vehicle and left the parking lot.

Their suspicions aroused, but not in possession of sufficient information to justify a stop, the detectives chose to follow the vehicle, radioing their dispatcher to call the jewelry store and obtain further information about the transaction. The dispatcher informed them that when the sales clerk called to get authorization for the charge, the person at American Express asked to speak to defendant. After he got on the phone, defendant was unable to answer "personal questions" the person at American Express asked him. In our view, this information, coupled with the information already in the detectives' knowledge, was sufficient to give rise to a reasonable suspicion that defendant was in possession of a stolen credit card. Based upon this, the detectives were entitled to stop the vehicle and make inquiry. Defendant's patently false and contradictory answers to questions put to him served to elevate the level of suspicion. The officers were entitled to detain defendant for a brief period while they telephoned the person whose name appeared on the American Express card, who defendant claimed was his cousin *(see, People v Hicks,* 68 NY2d 234). Once the detectives verified that the credit card was stolen, they possessed probable cause to arrest defendant. (Appeal from Judgment of Supreme Court, Erie County, Forma, J.—Criminal Possession Stolen Property, 2nd Degree.) Present—Callahan, J. P., Doerr, Green, Pine and Balio, JJ.