J-S39014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANDREA LYNNE INGRAM | |
| Appellant | No. 1962 MDA 2017 |

Appeal from the Judgment of Sentence imposed December 14, 2017
In the Court of Common Pleas of Bradford County
Criminal Division at No: CP-08-CR-0000770-2016

BEFORE:  STABILE, MURRAY and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:          **FILED AUGUST 21, 2018**

Appellant, Andrea Lynne Ingram, appeals from her judgment of sentence of 52—116 months' imprisonment for robbery, reckless endangerment and disorderly conduct.[1]  Appellant argues that the trial court erred in denying her motion to suppress evidence arising from her traffic stop and arrest in New York.  We affirm.

On March 29, 2016, Judy's Country Store in Bradford County, Pennsylvania was robbed at gunpoint.  On April 1, 2016, Uncle Jack's Store in Chemung County, New York, a county adjacent to Bradford County, was robbed at gunpoint.  A clerk at Uncle Jack's immediately reported the robbery to police, who radioed a dispatch to a deputy sheriff of the Chemung County

_____

[1] 18 Pa.C.S.A. §§ 3701, 2705, and 5503, respectively.

Sheriff's office.  Minutes later, the deputy sheriff stopped a vehicle in which Appellant was a passenger.  Appellant and her husband, Daniel Ingram, were arrested and charged with the New York robbery.  Following **Miranda**[2] warnings, Appellant confessed to the New York and Bradford County robberies.  On April 2, 2016, based on information received from the New York police, Pennsylvania law enforcement officers obtained and executed a search warrant for the Ingrams' residence in Bradford County.  On April 22, 2016, Bradford County police charged Appellant with the robbery of Judy's Country Store.

Appellant filed a motion to suppress in the New York case.  On September 28, 2016, the New York court suppressed the evidence seized during the vehicle stop and arrest on April 1, 2016 due to the failure of the police to substantiate the basis for the radio dispatch to the deputy sheriff.

Subsequently, Appellant filed a motion to suppress in the Bradford County case.  Relying on the doctrines of collateral estoppel and full faith and credit, Appellant argued that the New York court's decision required suppression of all evidence obtained as a result of the New York stop and arrest.  Appellant also argued that the New York traffic stop and ensuing events violated her rights under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

On April 27, 2017, the Bradford County court denied Appellant's collateral estoppel and full faith and credit arguments. On August 17, 2017, following an evidentiary hearing, the court denied the remainder of Appellant's suppression motion. The case proceeded to a non-jury trial in which the court found Appellant guilty of the aforementioned offenses. On December 14, 2017, the court imposed sentence. Appellant filed a timely notice of appeal, and both Appellant and the court complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal: "Should the statements made by the Appellant and the evidence obtained therefrom by Pennsylvania State Police be suppressed?" Appellant divides her argument into several subparts. First, she argues that the New York court's suppression order bound the Bradford County court under principles of collateral estoppel and full faith and credit. She then asserts that her traffic stop and arrest in New York was unconstitutional, thus requiring suppression of all evidence arising therefrom.

We review a challenge to an order denying suppression of evidence as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court

- 3 -

turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Baker*, 24 A.3d 1006, 1015 (Pa. Super. 2011). Our scope of review is limited to the record of the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

We first hold that the Bradford County court correctly determined that the New York court's decision was not binding on the Bradford County court under the doctrines of collateral estoppel and full faith and credit.

For the doctrine of collateral estoppel to apply: (1) the issue decided in the prior adjudication must be identical to the issue presented later; (2) the party against whom estoppel is asserted must be a party, or in privity with a party, to the prior adjudication; and (3) the party against whom estoppel is asserted must have had a fair and full opportunity to litigate the issue in the prior action. *Commonwealth v. Gant*, 945 A.2d 228, 229 (Pa. Super. 2008). In *Gant*, a Pennsylvania trial court ruled that a federal court's decision to suppress evidence in a case involving the same defendant collaterally estopped the Pennsylvania court from relitigating suppression issues. The Pennsylvania court granted the defendant's motion to suppress and dismissed the charges against him, prompting the Commonwealth to appeal. This Court held that collateral estoppel did not apply because "the prosecuting parties and sovereign interests are different in the two cases." *Id.* at 228. Here, as

- 4 -

in **Gant**, the prosecuting parties and sovereign interests (New York versus Pennsylvania) are different. Thus, the New York court's decision was not binding on the Bradford County court.

Appellant's full faith and credit argument is also devoid of merit. The United States Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." U.S. Const. art. IV, § 1. The full faith and credit clause, however, does not require Pennsylvania to follow suppression rulings from other states. In **Commonwealth v. Iverson**, 516 A.2d 738 (Pa. Super. 1986), the defendant contended that a Delaware court's ruling on his motion to suppress in a Delaware case bound a Pennsylvania state court under full faith and credit principles. Citing **Nelson v. George**, 399 U.S. 224, 229 (1970), we held that full faith and credit did not apply because "the full faith and credit clause is inapplicable with respect to a preliminary procedural matter involving a penal judgment."[3] **Iverson**, 516 A.2d at 739 n.2. Pursuant to **Iverson**, full faith

---

[3] **Iverson** also suggested that Pennsylvania trial courts can follow another state's suppression order under collateral estoppel principles. **Id.** at 739 n.2. Subsequently, however, we held in **Gant** that **Iverson's** comment about collateral estoppel should be disregarded as non-binding dicta. **Gant**, 945 A.2d at 231 ("collateral estoppel does not apply, and any dicta to the contrary in **Iverson** must also be disregarded because it conflicts with long-standing principles of collateral estoppel"). As a result, we apply **Gant's** collateral estoppel analysis to this case instead of **Iverson's**. **See** p. 4, **supra**.

On the other hand, **Iverson's** full faith and credit analysis has never come under attack, so we do not hesitate to apply this facet of **Iverson** to the present case.

and credit principles did not require the Bradford County court to follow the New York court's order.

We turn to Appellant's argument that her New York traffic stop, arrest, custodial confession and the search warrant for her Bradford County residence are all unconstitutional. After an evidentiary hearing, the Bradford County court made the following findings of fact:

March 29, 2016

On March 29, 2016, Judy's Country Store was robbed at gunpoint. The clerk, Jazmyne Stanback, described the perpetrator as a female wearing a green jacket with the hood up, sunglasses, a pink scarf wrapped around her face, gray sweatpants, white New Balance sneakers with a black backpack and a gun. She did not see a vehicle. PCO Elizabeth McCutcheon took the 911 call.

Gary Barnes, Jr., a neighbor to Judy's Country Store, spoke to Trooper Justin Landseidel. Mr. Barnes reported seeing a vehicle leave the scene while he was outside tending to his dog. He indicated that it was similar to a light colored Nissan Murano which he pointed to. Trooper Landseidel called into PCO McCutcheon that a neighbor saw a silver SUV similar to a Nissan Murano heading north.

PCO McCutcheon provided this information to Chemung County, New York dispatcher Brian Andrews because of the close proximity of said county to Bradford County. [Andrews] made a report and circulated [it] to police agencies and other dispatchers.

April 1, 2016

On April 1, 2016, Uncle Jack's Store in Elmira, [New York] was robbed at gunpoint. The clerk, Nanci Caskey, described the perpetrator as a white female wearing a black coat, dark sunglasses, multi-colored scarf around her face with a black duffel bag and a black handgun.

The description was broadcast by dispatchers. Trooper Kevin Backer of the New York State Police then broadcast that it sounded

- 6 -

like the Pennsylvania robbery for which information had been circulated previously. Susan Olthof, New York dispatcher supervisor, then broadcast the description of the vehicle that had been previously received from Pennsylvania—a silver SUV similar in style to a Nissan Murano.

Upon hearing the description of [the] vehicle, Deputy Richard Matthews, Chemung County Sheriff's Office, stopped the vehicle [Appellant] was a passenger in. The stop was made within minutes of the dispatches and was within minutes of Uncle Jack's store. The vehicle was a Mazda CX7 and light gray. (Upon viewing the pictures introduced as [Appellant's] exhibits, the Court finds that the color could be described as silver, gray or even light blue.) A Nissan Murano is similar in shape to a Mazda CX7.

Upon making contact, the driver was identified as Daniel Ingram and the passenger as [Appellant]. Deputy Matthews asked the driver where he was going to and where he had come from. Deputy Matthews indicated the answers were not making sense in that they couldn't identify [the] address of [the] wife's friend they said they were coming from and they were not in [the] correct direction of travel. [Appellant] and her husband were asked to exit [the] vehicle. Upon [Appellant] exiting vehicle, cash fell out of the vehicle passenger side where she had been sitting. This cash was secured. [Appellant] was transported for a "show up." Nanci Caskey positively identified [Appellant] as the individual who robbed Uncle Jack's Store.

[Appellant] was then transported to the Chemung County Sheriff's Office. She was given *Miranda* warnings by Sgt. Nicholas DeMuth which she waived. She also consented to a search of the vehicle. [Appellant] admitted to robbing Uncle Jack's Store and also admitted to robbing Judy's Country Store.

Investigator Joe Dieterle conducted a search of the vehicle and recovered $160.00 in cash, gray gloves, a multi-colored scarf, backpack, a dark colored coat and a black Desert Eagle .77 caliber air pistol.

Based upon all of the above information, a search warrant was obtained for [Appellant]'s residence. That search resulted in finding Newport cigarettes which were items stolen from Judy's Country Store, a pellet gun, gray sweatpants, white sneakers, an air pistol, burnt clothing, drugs and drug paraphernalia.

Trial Ct. Op., 8/17/17, at 1-3. Having reviewed the record, we conclude that it supports all of the Bradford County court's findings.

We apply New York courts' Fourth Amendment decisions to determine the legality of Appellant's traffic stop in New York. *Commonwealth v. Proctor*, 585 A.2d 454, 458 (Pa. 1991) ("where a criminal defendant is arrested by police in another state, the law of the state where the arrest took place is applied in determining the legality of that arrest").

Pursuant to *Terry v. Ohio*, 391 U.S. 1, (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). New York interprets the Fourth Amendment to permit vehicle stops by police based upon a "reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime." *People v. Spencer*, 84 N.Y.2d 749, 753 (N.Y. 1995). "A police officer's suspicion may be characterized as reasonable when it is based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *People v. Hoglen*, 162 A.D.2d 1036, 1037 (4th Dpt. 1990).

Although "a radioed tip may have almost no legal significance when it stands alone, . . . when considered in conjunction with other supportive facts, it may thus collectively, although not independently, support a reasonable

- 8 -

suspicion justifying intrusive police action." ***People v. Williams***, 136 A.D.3d 1280, 1283 (4th Dpt. 2016). Moreover, under the "fellow officer" rule, "[a] police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability." ***People v. Lypka***, 36 N.Y.2d 210, 213 (N.Y. 1975); ***see also United States v. Torres***, 534 F.3d 207, 210 (3d Cir. 2008) ("the knowledge of the dispatcher is imputed to the officers in the field when determining the reasonableness of the ***Terry*** stop"). Thus, the court will find reasonable suspicion when an officer makes a vehicle stop based on a radio transmission from another officer who himself has reasonable suspicion. ***People v. Porter***, 101 A.D.3d 44, 47-48 (3d Dpt. 2012) (police officer had reasonable suspicion to stop vehicle in which defendant was riding under the fellow officer rule, where officer received tip from defendant's parole officer who himself had reasonable suspicion to search defendant).

Here, on March 29, 2016, Bradford County police sent a radio dispatch to Chemung County, New York police reporting a gunpoint robbery at Judy's Country Store by a female who left the scene in a silver SUV that resembled a Nissan Murano. New York dispatchers circulated this information to local departments. Three days later, on April 1, 2016, Uncle Jack's Store in Chemung County, New York reported to police that a female had just held up the store at gunpoint. One New York dispatcher broadcasted that this sounded like the Pennsylvania robbery committed the other day. Another dispatcher

broadcasted the description of the vehicle received from Pennsylvania, a silver SUV resembling a Nissan Murano. Several minutes later, and within minutes of Uncle Jack's Store, New York Deputy Matthews stopped a light gray Mazda CX7 similar in shape to a Nissan Murano. The driver's explanation of where he and the female passenger had come from and were going did not make sense, because the driver could not identify the address where they were going, and the car was not traveling in the correct direction. The deputy ordered the occupants to exit the vehicle. When they did, cash fell out of the vehicle, and the deputy observed cash between the passenger seat and the door. Within minutes, the deputy transported Appellant to Uncle Jack's, where the store clerk identified Appellant as the robber.

Under the fellow officer rule, Deputy Matthews was entitled to rely on the reports from New York dispatchers about the robbery at Uncle Jack's Store. The New York dispatchers, in turn, were entitled to rely on information from Bradford County police about the robbery at Judy's Country Store. Additionally, mere minutes after the New York dispatches, and close in proximity to Uncle Jack's Store, Deputy Matthews observed a Mazda CX7 similar in shape to the vehicle identified in the dispatches. Collectively, this information provided reasonable suspicion that the occupants of the Mazda CX7 had committed the robberies. Moreover, the driver's nonsensical answers to the deputy's questions provided additional grounds for an investigative

detention, as did the deputy's observation of cash spilling out of the vehicle and stuffed between the passenger seat and door.

The fact that the vehicle was a gray Mazda CX7 instead of a silver Nissan Murano did not defeat reasonable suspicion, since the two vehicles are similar in make and color. *People v. Booker*, 64 A.D.3d 899 (3d Dept. 2009) (police had reasonable suspicion to believe that occupants of PT Cruiser had been involved in unlawful conduct based on, *inter alia*, Cruiser's "similarity in color, body type, and style to the vehicle involved in the robbery"); *People v. Adams*, 123 A.D.2d 769 (2d Dpt. 1986) (police had reasonable suspicion to stop car in which defendant was apprehended on basis of radio bulletin describing vehicle of "similar make and color" which had been observed minutes before near scene of armed robbery).

The investigatory detention and arrest following the traffic stop was also constitutional. Appellant's identification by the Uncle Jack's Store clerk, which took place minutes after the detention began, was part of a valid investigatory detention. *People v. Brisco*, 788 N.E.2d 611, 613-14 (2003) (one hour investigatory detention for purpose of single witness's identification of defendant was reasonable). The store clerk's identification provided probable cause to arrest Appellant for the Uncle Jack's robbery. *People v. Walters*, 140 A.D.3d 1761, 1762 (4th Dpt. 2016) (police had probable cause to arrest defendant following complainant's identification of defendant at crime scene).

Subsequent to her arrest and the administration of *Miranda* warnings at the police station, Appellant waived her *Miranda* rights and confessed to the robberies of Uncle Jack's Store and Judy's Country Store in Bradford County. Appellant argues that her confession was unconstitutional because it was the "direct result [of] an unlawful seizure." Appellant's Brief at 25. We disagree, based on our decision above that the traffic stop, investigatory detention and arrest were constitutional. Therefore, the Bradford County court correctly declined to suppress her confession.

Finally, Appellant contends that the search warrant for her Bradford County residence was unconstitutional because "Pennsylvania State Police relied solely on the information obtained in violation of Appellant's rights from the Chemung County Sheriff's Office." Appellant's Brief at 27. Once again, we have determined that the New York traffic stop, investigatory detention, arrest and custodial confession were all constitutional. These events furnished probable cause to issue the search warrant for her Bradford County residence. Therefore, the Bradford County court correctly declined Appellant's motion to suppress the evidence seized during the execution of the search warrant.

For these reasons, none of Appellant's objections to the Bradford County court's order denying her suppression motion have merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/21/2018