People v Suttles (2023 NY Slip Op 01380)

People v Suttles

2023 NY Slip Op 01380

Decided on March 17, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 17, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CURRAN, BANNISTER, AND OGDEN, JJ.

68 KA 21-01030

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
QUENTIN SUTTLES, DEFENDANT-APPELLANT. 

JONATHAN ROSENBERG, PLLC, BROOKLYN (JONATHAN ROSENBERG OF COUNSEL), FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (HARMONY A. HEALY OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered June 28, 2021. The judgment convicted defendant upon a plea of guilty of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, the plea is vacated, that part of the omnibus motion seeking to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Erie County, for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that Supreme Court erred in refusing to suppress physical evidence recovered after the vehicle in which he was a passenger was stopped by the police. We agree.
Specifically, defendant contends that the stop of the vehicle was unlawful because the evidence before the suppression court is insufficient to establish that the two police officers who conducted the stop had probable cause to believe that the driver of the vehicle had committed a traffic violation. At the suppression hearing, the officers testified that they first observed the vehicle in which defendant was a passenger when it passed in front of their patrol car, which was stopped or coming to a stop on a side street. One of the officers testified that he visually estimated the vehicle, which was in a 30 mph zone, to be traveling at approximately 40 miles per hour; the other testified that he visually estimated the speed to be approximately 40-45 miles per hour. Based on these visual estimates, the officers initiated a vehicle stop. It is undisputed that the officers did not use radar at any point, nor did they pace the vehicle—i.e., follow it at a consistent distance—to confirm their visual estimates before initiating the stop. When questioned regarding their training to visually estimate a vehicle's speed without pacing, one officer stated that he did not recall receiving such training, and the other testified that he did not believe such training existed. On further questioning, one of the officers testified that he had experience visually estimating speed due to the amount of time he spent on the road as a patrol officer, but failed to provide a reasoned explanation of how the time he spent driving on city streets enabled him to acquire the ability to visually estimate speed.
While it is well settled that a qualified police officer's testimony that he or she visually estimated the speed of a defendant's vehicle may be sufficient to establish that the defendant exceeded the speed limit (see People v Olsen, 22 NY2d 230, 232 [1968]), here, the People failed to establish the officers' training and qualifications to support their visual estimates of the speed of the vehicle in which defendant was a passenger (see People v Reedy, 211 AD3d 1629, 1630 [4th Dept 2022]; cf. People v Scott, 189 AD3d 2110-2111 [4th Dept 2020], lv denied 36 NY3d 1123 [2021]; see generally People v Smith, 162 AD2d 999, 999 [4th Dept 1990], lv denied 76 NY2d 896 [1990]). Thus, inasmuch as the People failed to meet their burden of showing the [*2]legality of the police conduct in stopping the vehicle in which defendant was a passenger in the first instance, we conclude that the court erred in refusing to suppress the physical evidence seized as a result of the traffic stop. Because our determination results in the suppression of all evidence supporting the crime charged, the indictment must be dismissed (see People v Dortch, 186 AD3d 1114, 1116 [4th Dept 2020]).
In light of our determination, we need not reach defendant's remaining contention.
All concur except Curran, J., who dissents and votes to affirm in the following memorandum: I respectfully dissent and vote to affirm because I conclude that Supreme Court properly refused to suppress physical evidence inasmuch as the weight of the evidence at the suppression hearing supports the court's determination that the police had probable cause to stop the vehicle in which defendant was a passenger and which they observed traveling at an excessive rate of speed in violation of Vehicle and Traffic Law § 1180 (d) (1) (see generally People v Hinshaw, 35 NY3d 427, 430 [2020]). Ultimately, the court's determination that the two testifying police officers credibly testified to observing the vehicle travel in excess of the posted speed limit is entitled to great deference, and I perceive no reason to disturb that credibility determination (see People v Layou, 134 AD3d 1510, 1511 [4th Dept 2015], lv denied 27 NY3d 1070 [2016], reconsideration denied 28 NY3d 932 [2016]). In my view, the majority's conclusion that "the People failed to establish the officers' training and qualifications to support their visual estimates of the speed of the vehicle in which defendant was a passenger" and its principal reliance upon, inter alia, People v Reedy (211 AD3d 1629, 1630 [4th Dept 2022]) and People v Smith (162 AD2d 999, 999 [4th Dept 1990], lv denied 76 NY2d 896 [1990]), conflate the standard by which we weigh evidence received without objection with the sufficiency of admitted evidence to prove a fact beyond a reasonable doubt.
In reviewing the court's suppression determination, we consider whether the People met their "burden of going forward to show the legality of the police conduct in the first instance" (People v Berrios, 28 NY2d 361, 367 [1971] [internal quotation marks and emphasis omitted]; see People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]; People v Dortch, 186 AD3d 1114, 1115 [4th Dept 2020]). Specifically, the People were required to demonstrate that the police had probable cause to stop the vehicle for speeding (see generally Hinshaw, 35 NY3d at 430). It is well settled that probable cause "does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed" (People v Guthrie, 25 NY3d 130, 133 [2015], rearg denied 25 NY3d 1191 [2015] [internal quotation marks omitted]; see generally CPL 70.10 [2]). Additionally, "[a] police officer who can articulate credible facts establishing reasonable cause to believe that someone has violated a law has established a reasonable basis to effectuate a [traffic] stop" (Guthrie, 25 NY3d at 133 [internal quotation marks omitted]).
In reversing and suppressing the physical evidence, the majority's essential position is that the People's evidence at the hearing was insufficient to establish that the police had probable cause to stop the vehicle because the two officers' testimony about the vehicle's excessive speed was inadmissible due to an inadequate foundation. Crucially, however, the officers' testimony about the vehicle's excessive rate of speed came into evidence without any objection from defense counsel challenging its admissibility on that ground (see generally CPL 470.05 [2]; People v Guzman, 226 AD2d 218, 219 [1st Dept 1996], lv denied 88 NY2d 986 [1996]; People v Arefaine, 221 AD2d 979, 979-980 [4th Dept 1995], lv denied 87 NY2d 919 [1996]). It is well settled that "[e]vidence, though not competent, received without objection may be relied upon to establish a fact in controversy" (Ford v Snook, 205 App Div 194, 198 [4th Dept 1923], affd 240 NY 624 [1925]; see People v Lawrence, 64 NY2d 200, 206 [1984]; Matter of Kellogg v Kellogg, 300 AD2d 996, 996-997 [4th Dept 2002]). Because the officers' testimony about the vehicle's speed was properly in the record before the suppression court, I conclude that we cannot deem the evidence to be legally insufficient to support the court's determination—rather, the question pertains to the weight that the testimony is to be accorded.
Here, defendant does not contend that the officers' testimony that the vehicle was speeding was insufficient because it was unreasonable under the circumstances, and neither I nor the majority reach such a conclusion. In my view, evaluating the credibility of a witness's testimony for purposes of establishing probable cause—once the underlying testimony is admitted into evidence—solely involves a review of the weight accorded such testimony, not its [*3]sufficiency. Thus, by requiring that the People—in the first instance and absent any objection by defendant—provide a detailed foundation during the suppression hearing for a visual estimate of speed based on an officer's "training and qualifications," the majority imposes a threshold sufficiency requirement on that testimony. In my view, such a requirement is not founded on any statute and is contrary to longstanding common law regarding evidence of visual estimates of the speed of motor vehicles.
Indeed, in concluding that the evidence here is legally insufficient to support the court's suppression determination, the majority's principal error is its reliance on Reedy (see 211 AD3d at 1630) and Smith (see 162 AD2d at 999), as well as on People v Olsen (22 NY2d 230 [1968])—the Court of Appeals case upon which Reedy and Smith were largely predicated (see Olsen, 22 NY2d at 231-232). In Olsen and Smith, each court considered whether there was legally sufficient evidence to convict the defendant beyond a reasonable doubt of violating the Vehicle and Traffic Law. Here, in contrast, the underlying evidence of speeding at the suppression hearing was not admitted to establish defendant's guilt beyond a reasonable doubt and, in any event, its admissibility was uncontested on foundational grounds. In short, I see no reason, given the different applicable standards, to import the sufficiency requirements of Olsen and Smith—needed to establish a defendant's guilt—into the suppression context, where all that is necessary is probable cause.
To be sure, one of the cases relied on by the majority, Reedy, supports its bottom-line resolution of this case, particularly inasmuch as it too arises out of the context of a suppression decision (see 211 AD3d at 1630). However, for the reasons elucidated above, Reedy's central rationale that the People are required in the first instance, and absent any objection by the defendant, to provide a detailed foundation during the suppression hearing for a visual estimate of speed, and its reliance on Smith and Olsen, suffer from the same central deficiencies as the majority's reasoning in this case—particularly its imposition of a stringent sufficiency requirement to establish a witness's qualifications to estimate the speed of a vehicle. Thus, it is my view that Reedy also was an errant diversion from well-settled precedent on the issue of what evidence is required to demonstrate a visual estimate of the speed of a vehicle.
Regardless, even met on the majority's own terms, I conclude that the officers' testimony did not lack an adequate foundation with respect to the evidence that the vehicle was speeding. "It has long been the rule that '[a]n estimate of the speed at which an automobile is moving at a given time is generally viewed as a matter of common observation rather than expert opinion, and it is well settled that any person of ordinary ability and intelligence having the means or opportunity of observation is competent to testify as to the rate of speed of such a vehicle' " (Guzek v B & L Wholesale Supply, Inc., 151 AD3d 1662, 1663-1664 [4th Dept 2017]). Similarly, "a lay witness will ordinarily be permitted to testify as to the estimated speed of an automobile, based upon the prevalence of automobiles in our society, [and] the frequency with which most people view them at various speeds" (Guthrie v Overmyer, 19 AD3d 1169, 1170 [4th Dept 2005] [internal quotation marks omitted]). This Court also has held that even when a police officer does "not testify in detail about his [or her] training, the court [is] entitled to assume, for purposes of [a suppression] hearing, that a police officer with over a year's experience can visually estimate the speed of a moving vehicle" (People v Saylor, 166 AD2d 899, 899 [4th Dept 1990], lv denied 77 NY2d 966 [1991]). We also have held that, for purposes of a conviction, it was not error for a court to admit "the opinion of [a] lay witness that defendant's automobile was traveling 'fast' " (People v Williams, 182 AD2d 1084, 1084 [4th Dept 1992], lv denied 80 NY2d 840 [1992]).
Here, under the above-articulated standard, the court properly concluded that the testimony of the two officers met the People's "burden of going forward to show the legality of the police conduct in the first instance" (Berrios, 28 NY2d at 367 [internal quotation marks and emphasis omitted]). Specifically, the officers testified that they each had about four years' experience in their jobs, and that their conclusions were based on their experience, irrespective of any formal training pertaining to visual speed estimates. To that end, one officer testified that he had made "numerous stops regarding traffic," and the other officer indicated that he spent a significant amount of time on the road and made determinations about the speeds of vehicles, establishing his experience in visually estimating those speeds. Thus, even if we were required to sua sponte analyze the foundation of the evidence in this context, the evidentiary threshold for a visual estimate of speed in New York is so minimal that the evidence proffered by the People [*4]here is clearly sufficient to support the court's determination—i.e., that the officers' testimony established that they had probable cause to believe that the vehicle had been speeding at the time of the traffic stop (see generally Williams, 182 AD2d at 1084; Saylor, 166 AD2d at 899).
Nevertheless, with respect to the officers' testimony, "[t]he question as to the opportunity of a witness to judge, under the particular circumstances, the speed of an automobile, has been held, as a general rule, to go to the weight of his testimony rather than to its admissibility" (Marcucci v Bird, 275 App Div 127, 129 [3d Dept 1949]). Indeed, "[i]t is well settled that great deference should be given to the determination of the suppression court, which had the opportunity to observe the demeanor of the witnesses and to assess their credibility, and its factual findings should not be disturbed unless clearly erroneous" (Layou, 134 AD3d at 1511). Here, the suppression court was in the best position to observe the credibility of the testifying officers, who essentially cross-corroborated each other's testimony about the speed of the vehicle. Further supporting the court's credibility determinations, and corroborating the testimony of the officers, I note that the court also received evidence, without objection and which in any event would have been admissible (see CPL 710.60 [4]; People v Valentin, 183 AD3d 1271, 1272 [4th Dept 2020], lv denied 35 NY3d 1049 [2020]), that the vehicle's driver admitted that she was traveling in excess of the speed limit. Consequently, I conclude that the court's determination is supported by the weight of the credible evidence in the record, and I would therefore affirm.
Entered: March 17, 2023
Ann Dillon Flynn
Clerk of the Court