People v McMillon (2023 NY Slip Op 05064)

People v Mcmillon

2023 NY Slip Op 05064

Decided on October 6, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 6, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, OGDEN, GREENWOOD, AND NOWAK, JJ.

638 KA 22-00490

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
AL AMIN MCMILLON, DEFENDANT-APPELLANT. 

LEANNE LAPP, PUBLIC DEFENDER, CANANDAIGUA, KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT. 
JAMES B. RITTS, DISTRICT ATTORNEY, CANANDAIGUA (V. CHRISTOPHER EAGGLESTON OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Ontario County Court (Brian D. Dennis, J.), rendered March 22, 2022. The judgment convicted defendant, upon his plea of guilty, of criminal possession of stolen property in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, the plea is vacated, that part of the omnibus motion seeking to suppress physical evidence and statements is granted, the indictment is dismissed, and the matter is remitted to Ontario County Court for proceedings pursuant to CPL 470.45.
Memorandum: Defendant appeals from a judgment convicting him, upon his plea of guilty, of criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [1]), arising from an incident wherein sheriff's deputies, suspecting that defendant and other occupants of a vehicle had shoplifted in a mall, conducted a stop of the vehicle in the mall parking lot, which ultimately yielded evidence that defendant and the other occupants had stolen merchandise from several stores. Defendant contends on appeal that the People failed to meet their initial burden of showing the legality of the vehicle stop because, based on the evidence presented at the suppression hearing, the information available to the deputies was insufficient to provide them with the requisite reasonable suspicion that the occupants of the vehicle had committed or were committing a crime, and thus County Court erred in refusing to suppress physical evidence and statements as the fruits of an unlawful vehicle stop. We agree with defendant.
It is well settled that, although "a defendant who challenges the legality of a search and seizure has the burden of proving illegality, the People are nevertheless put to the burden of going forward to show the legality of the police conduct in the first instance" (People v Berrios, 28 NY2d 361, 367 [1971] [internal quotation marks and emphasis omitted]; see People v Dortch, 186 AD3d 1114, 1115 [4th Dept 2020]). As relevant here, "a vehicle stop is lawful if based on a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (People v Balkman, 35 NY3d 556, 559 [2020]; see People v Hinshaw, 35 NY3d 427, 430 [2020]; People v Spencer, 84 NY2d 749, 752-753 [1995], cert denied 516 US 905 [1995]). "Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (People v Cantor, 36 NY2d 106, 112-113 [1975]; see People v Brannon, 16 NY3d 596, 601-602 [2011]). "The requisite knowledge must be more than subjective; it should have at least some demonstrable roots," and a "[m]ere 'hunch' or 'gut reaction' will not do" (People v Sobotker, 43 NY2d 559, 564 [1978]; see Hinshaw, 35 NY3d at 438-439). Reasonable suspicion "may not rest on equivocal or innocuous behavior that is susceptible of an innocent as well as a culpable interpretation" (Brannon, 16 NY3d at 602 [internal quotation marks omitted]; see Hinshaw, 35 NY3d at 438). "A stop based on reasonable suspicion will be upheld so long as the intruding officer can point to 'specific and articulable facts which, along with any logical [*2]deductions, reasonably prompted th[e] intrusion' " (Brannon, 16 NY3d at 602, quoting Cantor, 36 NY2d at 113; see People v Johnson, 40 NY3d 172, 175-176 [2023]; Balkman, 35 NY3d at 559).
Here, the evidence presented at the suppression hearing established that, after receiving information from mall security relaying a complaint that "two suspicious black males" had exited the mall "with H & M bags full of merchandise" and conveying that individuals who matched a description of the two males were subsequently observed on surveillance video in a particular vehicle in the parking lot outside a different entrance to the mall, the first testifying deputy observed via live surveillance video two individuals matching the description, accompanied by a third individual, reenter the mall through that entrance with an empty H & M bag, proceed to a nearby store, leave the store and walk out of the mall approximately five minutes later with a full H & M bag, return to the vehicle, and place the bag in the trunk. The first deputy then radioed his observations to other responding law enforcement personnel and the second testifying deputy initiated the stop of the vehicle in the parking lot.
We conclude that the vehicle stop was unlawful because the totality of the information known to the deputies at the time of the stop, along with any rational inferences to be drawn therefrom, were insufficient to establish reasonable suspicion that the occupants of the vehicle had committed or were committing a crime (see generally People v Taylor, 31 AD3d 1141, 1142 [4th Dept 2006]). The first deputy testified that the reported conduct in the initial complaint was of concern because there was no H & M store at the mall at that time and, based on his training and experience, it was rare for stores in the mall to fill personal, non-store bags with merchandise and, indeed, numerous of the 60 to 70 theft cases that he had investigated at the mall over a period of three years involved the use of outside bags. The deputies readily acknowledged, however, that bringing outside bags into the mall was not unlawful or violative of mall policy, that it was not uncommon for mall visitors to return merchandise in bags that were not from the original store, and that mall visitors could properly put merchandise into personal, non-store bags if it was paid for. The first deputy conceded that, while viewing the live surveillance video, he did not observe defendant or the other individuals stealing anything from the subject store, and the second deputy likewise acknowledged that, prior to the vehicle stop, he had not made any observations to indicate that defendant or the other individuals had failed to pay for the merchandise. Additionally, the first deputy observed defendant and the other individuals walking, not running, back to the vehicle after exiting the store, and conceded that it was possible that they had purchased the merchandise during their time in the store (cf. People v Espada, 199 AD3d 499, 500 [1st Dept 2021], lv denied 37 NY3d 1160 [2022]). Thus, given the acknowledged existence of reasonable innocent explanations for the use of an outside bag from a store not present in the mall and the concession that it was possible under the circumstances that defendant and the other individuals had, in fact, properly purchased the merchandise before they again exited the mall, we conclude that the conduct known to the deputies constituted nothing more than "equivocal or innocuous behavior that is susceptible of an innocent as well as a culpable interpretation," which was insufficient to provide the requisite reasonable suspicion to justify the vehicle stop (Hinshaw, 35 NY3d at 438 [internal quotation marks omitted]; see People v Dean, 73 AD3d 801, 802-803 [2d Dept 2010]; People v Sunley, 171 AD2d 1063, 1063-1064 [4th Dept 1991], lv denied 77 NY2d 1001 [1991]).
In concluding otherwise, the dissent opines that "[t]he rational inference to be drawn from the fact that defendant and the other individuals went into a store with an empty bag from a store not located in the mall and left the store just five minutes later with a full bag of merchandise in a bag not from that store, which the [first] deputy testified was very rare, is that they stole the merchandise from the store" because "[i]t simply strains credulity to believe that someone could retrieve a large quantity of merchandise and pay for it through a cashier in such a short amount of time." That deduction, however, conflicts with the acknowledgments in the first deputy's testimony that he did not observe the individuals stealing anything from the store and that it was possible that they had purchased the merchandise during their time in the store. The dissent's attempt to discount the first deputy's acknowledgment of the possibility that the individuals had not shoplifted by resorting to an unfinished fragment of his testimony is unconvincing given that the People, who had "the burden of going forward to show the legality of the police conduct in the first instance" (Berrios, 28 NY2d at 367 [internal quotation marks and emphasis omitted]), declined to ask any additional questions immediately following the first deputy's concession. Inasmuch as the first deputy conceded that, when the individuals were observed walking out of [*3]the store with a full bag approximately five minutes after entering, it was possible that they had just purchased the merchandise, the record indicates that the observed conduct might have been innocent. However, as previously stated, reasonable suspicion "may not rest on equivocal or 'innocuous behavior' that is susceptible of an innocent as well as a culpable interpretation" (Brannon, 16 NY3d at 602). For those reasons, and in light of the totality of the circumstances previously discussed, we are not persuaded by the reasoning offered by the dissent.
Consequently, inasmuch as the People failed to meet their burden of showing the legality of the police conduct in stopping the vehicle in which defendant was a passenger in the first instance, we conclude that the court erred in refusing to suppress the physical evidence and statements obtained as a result of the vehicle stop (see People v Suttles, 214 AD3d 1313, 1314 [4th Dept 2023], lv denied 40 NY3d 936 [2023]; People v Reedy, 211 AD3d 1629, 1630 [4th Dept 2022]). Because our determination results in the suppression of all evidence supporting the crime charged, the indictment must be dismissed (see Suttles, 214 AD3d at 1314; Reedy, 211 AD3d at 1630). In light of our determination, we do not reach defendant's remaining contention.
All concur except Bannister and Greenwood, JJ., who dissent and vote to affirm in the following memorandum: We respectfully dissent and vote to affirm the judgment because we conclude that County Court properly refused to suppress physical evidence and statements as the fruits of a stop of a vehicle in a mall parking lot. Contrary to the majority, we conclude that the police had reasonable suspicion to justify the vehicle stop.
A vehicle stop is permissible " 'when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime' " (People v Walls, 37 NY3d 987, 988 [2021]; see People v Spencer, 84 NY2d 749, 752-753 [1995], cert denied 516 US 905 [1995]). "Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (People v Cantor, 36 NY2d 106, 112-113 [1975]). It requires "specific and articulable facts which, along with any logical deductions, reasonably prompted th[e] intrusion" (People v Brannon, 16 NY3d 596, 602 [2011] [internal quotation marks omitted]; see People v Floyd, 158 AD3d 1146, 1147 [4th Dept 2018], lv denied 31 NY3d 1081 [2018]). It does not require absolute certainty (see Brannon, 16 NY3d at 602).
The evidence presented at the suppression hearing established that mall security reported to the police that two men had exited the mall with H & M bags full of merchandise, which was suspicious because there was no H & M store at that mall and it was "very rare" for stores in the mall to fill personal, non-store bags with merchandise. A deputy further testified that, of the 60 to 70 theft cases that he had investigated at the mall, numerous ones involved the use of outside bags. The deputy learned that the men were in a particular sedan in the parking lot outside another entrance of the mall, and he proceeded to view live video surveillance, from the cameras in the mall, at the sheriff's department office. He observed three individuals, two of whom matched a description of the men, reenter the mall, now with an empty H & M bag. They went into a nearby store and, about five minutes later, exited the mall with the H & M bag full of merchandise and placed the bag in the trunk of the same sedan. The deputy radioed his observations to responding law enforcement personnel, and the vehicle was stopped in the parking lot.
We agree with the court that the police had the requisite reasonable suspicion that the driver or occupants of the vehicle had committed a crime to justify the vehicle stop. The rational inference to be drawn from the fact that defendant and the other individuals went into a store with an empty bag from a store not located in the mall and left the store just five minutes later with a full bag of merchandise in a bag not from that store, which the deputy testified was very rare, is that they stole the merchandise from the store. It simply strains credulity to believe that someone could retrieve a large quantity of merchandise and pay for it through a cashier in such a short amount of time (see generally People v Wesley, 175 AD3d 1194, 1194-1195 [1st Dept 2019], lv denied 34 NY3d 1134 [2020]). In criticizing us for making that deduction, the majority relies on the first deputy's testimony that he did not actually observe the individuals steal anything from the store and that it was "possible" that the individuals had purchased the merchandise during that brief period in the store. The deputy's testimony, however, showed that he could not have observed whether the individuals stole anything from the store because the [*4]camera he was monitoring showed only the hallways and not inside the store. Moreover, in order for the deputy to have reasonable suspicion that criminal activity was at hand, he did not need to actually see the individuals steal anything. In addition, the deputy was asked by defense counsel on recross-examination whether it was "[p]ossible that they just bought merchandise," and the deputy answered "[i]t is possible, but in my training and experience - -" before defense counsel cut off his response.
The majority concludes that the conduct known to the deputies constituted merely equivocal or innocuous behavior that was susceptible of an innocent explanation, relying on the testimony of the deputies that it was not unlawful to bring an outside bag into the mall and that it was not uncommon for mall visitors to return merchandise in bags that were not from the original store. First, while it may not have been unlawful to bring an outside bag into the mall, the first deputy testified that it was very rare for stores to fill an outside bag with merchandise and that numerous theft cases that he had investigated involved the use of outside bags. Second, the fact that mall visitors may return merchandise in bags that were not from the original store is irrelevant where, as here, defendant and the other individuals were entering the mall with empty bags, and therefore they obviously were not returning any merchandise.
Moreover, while the various activities of defendant and the other individuals observed by mall security and the deputy may have had innocent explanations by themselves, when those activities are considered in combination and through the lens of a trained law enforcement officer who was "well versed" in the methods used by shoplifters, we conclude that they gave rise to reasonable suspicion to justify the vehicle stop (People v Valentine, 17 NY2d 128, 132 [1966]; see generally People v Bigelow, 66 NY2d 417, 423 [1985]). The testimony at the suppression hearing and the fair inferences from the testimony showed that it was common for shoplifters to use outside bags to commit their crimes, and that defendant exited the mall with outside bags full of merchandise, emptied them in a vehicle, carried a now-empty bag back into the mall through a different entrance, and quickly exited with that same bag again full of merchandise. We see no reason to disturb the "common sense conclusion[]" (United States v Cortez, 449 US 411, 418 [1981]) by the trained deputy that the driver or occupants of the vehicle had committed a crime, i.e., shoplifting. Indeed, based on the information known and witnessed by the deputy, the "inference was inescapable" that criminal activity was taking place (People v Edey, 183 AD3d 430, 430 [1st Dept 2020], lv denied 35 NY3d 1044 [2020]; see generally Bigelow, 66 NY2d at 423).
Defendant's remaining contention that the plea was not knowingly, intelligently, and voluntarily entered is not preserved for review because he did not move to withdraw the plea or to vacate the judgment of conviction (see People v Davilla, 202 AD3d 1452, 1453 [4th Dept 2022], lv denied 38 NY3d 1133 [2022]; People v Newsome, 198 AD3d 1357, 1357-1358 [4th Dept 2021], lv denied 37 NY3d 1147 [2021]). This case does not fall within the rare exception to the preservation requirement (see People v Lopez, 71 NY2d 662, 666 [1988]), and we would decline to exercise this Court's power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [3] [c]).
Entered: October 6, 2023
Ann Dillon Flynn
Clerk of the Court